State of Wisconsin, Plaintiff-Respondent,

v.

Antonio K. Phillips, Defendant-Appellant.†

Court of Appeals

*No. 2009AP249–CR. Submitted on briefs August 5, 2009.
—Decided November 3, 2009.*

2009 WI App 179

(Also reported in 778 N.W.2d 157.)

† Petition for Review denied 1/14/10. Abrahamson, C.J., dissents.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Backes*, of Shorewood.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Ann C. Murphy*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. Antonio K. Phillips appeals the judgments convicting him, after a jury trial, of delivery of a controlled substance—cocaine (one gram or less), possession of a controlled substance —tetrahydrocannabinols (marijuana), second or subsequent offense, and possession with intent to deliver a controlled substance—cocaine (more than one gram but less than five grams), contrary to Wis. Stat. §§ 961.41(1)(cm)1g., 961.41(3g)(e), 961.41(1m)(cm)1r., and 961.48 (2005–06).[1] He also appeals the order denying his postconviction motion alleging ineffective assistance of trial counsel.

---

[1] There are two judgments of conviction in this matter. One judgment references Phillips' conviction for delivery of a controlled substance—cocaine (one gram or less) and possession with intent to deliver a controlled substance—cocaine (more than one gram but less than five grams). The other judgment references only Phillips' conviction for possession of a controlled substance—tetrahydrocannabinols (marijuana), second or subsequent offense.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 2.  Phillips claims that the trial court erred in denying his motion to suppress evidence obtained in a search because the police created the exigent circumstances that led them to enter his house following a controlled buy completed by an undercover police officer. Phillips' claim of ineffective assistance arises out of trial counsel's conduct during the suppression motion hearing. Because the police decided to conduct a "knock and talk" after the undercover officer exited Phillips' house having purchased drugs from Phillips, and on the way to Phillips' back door to conduct the knock and talk, the police saw him standing in the doorway, and Phillips, after seeing the police, fled into the residence and shut the door, the exigent circumstances were not manufactured by the police. We further conclude that the denial of Phillips' postconviction motion without a hearing was proper because Phillips' claim that he received the ineffective assistance of counsel is conclusory in nature and the record conclusively shows that he is not entitled to relief. Consequently, we affirm.

## I. BACKGROUND.

¶ 3.  According to the criminal complaint and the testimony at trial, the police decided to conduct a controlled buy using an undercover police officer after receiving a complaint of drug dealing at a particular address in Milwaukee. The undercover officer went to the address with $60.00 of marked money. Upon reaching the front door of the residence, the undercover officer was directed to go to the back door by Phillips. Once there, he was met by Phillips who invited him into the kitchen where the officer purchased cocaine from Phillips and gave Phillips the recorded money. The officer left the house and pro-

ceeded to a car parked nearby where other police officers were waiting. The lead detective then decided to initiate a knock and talk and began walking to the back door with two police officers when they spotted Phillips standing in the doorway.[2] Phillips, upon seeing the police officers, began retreating into his home, at which point the officers then began running to the door while yelling, "Police, stop."[3] Phillips did not stop, and

---

[2] The lead detective testified at the trial that he was accompanied by two officers when he approached the residence to initiate the knock and talk; however, according to the criminal complaint, he was accompanied by one other officer when he approached the residence. This discrepancy is not pivotal to the resolution of Phillips' appeal.

[3] It appears Phillips was aware of the police presence behind his residence prior to when they yelled for him to stop. In this regard, one of the police officers who approached Phillips' residence to conduct the knock and talk testified at trial:

Q   As you observed the individual at the back of the residence, what did you do after making that observation?

A   When I observed that individual, I observed that he was in fact wearing the same clothing description that [the undercover officer who made the buy] had provided me with. We continued forward. And at that time I observed that that subject also observed us. And then that subject retreated into the house.

Q   Did you make any verbal commands towards that particular subjects [sic]?

A   Correct, yes. We—I did. We said, *Police, stop*.

. . . .

Q   Okay. After you observed the subject and made that particular command, were you walking, were you running, what was going on at that point?

A   Once we observed that the subject had in fact observed us and retreated into the home, I began running towards the house.

(Emphasis in original.)

instead, he shut the door and ran up the stairs. The police pursued Phillips by kicking in the door. Phillips was arrested inside and contraband was found in the house. The undercover officer identified Phillips from a photo array, and Phillips was charged with one count of delivery of a controlled substance—cocaine.

¶ 4.   Prior to the jury trial, the State filed an amended information charging Phillips with two additional charges:   possession of a controlled substance

---

Similarly, the lead detective testified at trial:

Q   Where did you specifically observe Mr. Phillips standing behind the residence?

A   He was standing in the doorway. I'm not sure if he was on the top step or—but he was in the area of the doorway.

Q   How far away were you when you first observed him?

A   Probably 20 or 30 feet . . . .

Q   What did you do once you observed him?

A   . . . [O]nce [Phillips] sees us, we have our badges and such on, and he turns and runs into the house. [An officer accompanying me] is yelling police. I think I even yelled police a couple of times, and we ran towards him.

Q   I guess that's an important question here. How were you dressed as you approached the back of the residence?

A   I had my badge and I.D. out. I had a blue windbreaker-type jacket with the police badge that comes off the side and police on the back.

    . . . .

Q   Once you observed Mr. Phillips make or at least become aware of your presence, can you be more descriptive in what he did next?

A   He fled back into the residence and shut the door.

Q   What were you doing at that point and time?

A   I was running at that point, trying to catch him before he'd get the door locked.

583

—tetrahydrocannabinols (marijuana), second or subsequent offense, and possession with intent to deliver a controlled substance—cocaine (more than one gram but less than five grams). Phillips filed a motion to suppress alleging that because the police manufactured their own exigent circumstances by deciding to conduct a knock and talk rather than obtaining a search warrant, the pursuit of Phillips into his house was illegal, and therefore, the drugs found in the home had to be suppressed.[4] The trial court denied the motion.

¶ 5. Phillips was convicted of all three counts. On the charge of delivery of a controlled substance—cocaine (one gram or less), he was sentenced to two years of imprisonment to be followed by two years of extended supervision; on the charge of possession of a controlled substance—tetrahydrocannabinols (marijuana), second or subsequent offense, he was given a sentence of one year in the House of Correction; and on the charge of possession with intent to deliver a controlled substance—cocaine (more than one gram but less than five grams), he was sentenced to three years of imprisonment to be followed by three years of extended supervision. All of the sentences were to be served concurrent to one another but consecutive to any other sentence. Phillips brought a postconviction motion seeking to have the convictions vacated and alleging that he received the ineffective assistance of trial counsel. This motion was denied without a hearing. Phillips now appeals.

---

[4] No questions were asked, and consequently, no testimony was offered, at either the suppression hearing or the trial as to why the decision was made to forego obtaining a search warrant.

## II. ANALYSIS.

A. *The trial court properly denied Phillips' motion to suppress.*

■■

¶ 6. "When we review a trial court's ruling on a motion to suppress, we uphold [its] factual findings unless those findings are clearly erroneous." *State v. Patton*, 2006 WI App 235, ¶ 7, 297 Wis. 2d 415, 724 N.W.2d 347. Whether the facts satisfy constitutional principles is a question of law for this court to decide. *See State v. Kyles*, 2004 WI 15, ¶ 7, 269 Wis. 2d 1, 675 N.W.2d 449. We are not bound by the trial court's decision on questions of law, but we benefit from its analysis. *Id.* "The constitutional reasonableness of a search and seizure is a question of law." *State v. Nicholson*, 174 Wis. 2d 542, 545, 497 N.W.2d 791 (Ct. App. 1993). Whether probable cause and exigent circumstances exist are also both questions of law subject to independent, *de novo* review. *See State v. Faust*, 2004 WI 99, ¶ 9, 274 Wis. 2d 183, 682 N.W.2d 371; *State v. Kiper*, 193 Wis. 2d 69, 79–80, 532 N.W.2d 698 (1995).

■ ■■

¶ 7. A warrantless entry into one's home by police is presumptively prohibited by both the United States and Wisconsin Constitutions. *State v. Hughes*, 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621. However, there are "exceptions to the warrant requirement where the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference." *Id.* The government bears the burden of establishing a recognized exception to the warrant require-

ment. *State v. Leutenegger*, 2004 WI App 127, ¶ 12, 275 Wis. 2d 512, 685 N.W.2d 536.

¶ 8. There are four exigent circumstances that may justify a warrantless search: "(1) an arrest made in 'hot pursuit,' (2) a threat to safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee." *State v. Kiekhefer*, 212 Wis. 2d 460, 476, 569 N.W.2d 316 (Ct. App. 1997) (citations and one set of internal quotation marks omitted). The test for determining whether the requisite exigent circumstances existed to justify the warrantless search is an objective one, with the focus on "whether a police officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of the suspect's escape." *Hughes*, 233 Wis. 2d 280, ¶ 24. Our review of the exigent circumstances is "directed by a flexible test of reasonableness under the totality of the circumstances." *State v. Smith*, 131 Wis. 2d 220, 229, 388 N.W.2d 601 (1986). "However, the government cannot justify a search on the basis of exigent circumstances that are of the law enforcement officers' own making." *Kiekhefer*, 212 Wis. 2d at 476; *see also Hughes*, 233 Wis. 2d 280, ¶ 28 n.7. Here, the State relies on both the first and third exceptions for a warrantless entry, namely, an arrest made in hot pursuit and the risk that evidence will be destroyed.

¶ 9. "Whether a warrantless entry into a home is justified by the exigent circumstances exception is a mixed question of fact and law." *Leutenegger*, 275 Wis. 2d 512, ¶ 13. The trial court's findings of fact will be upheld unless they are clearly erroneous. *Id.* How-

586

ever, this court will determine whether the facts establish exigent circumstances sufficient to justify a warrantless entry as a question of law. *Id.*

¶ 10.   Neither party disputes that probable cause for a warrant existed following the controlled buy; as such, our focus is on whether exigent circumstances existed to justify the warrantless search. Phillips argues that the trial court erred in denying his motion to suppress because the police impermissibly created the exigency used to justify the warrantless search. After conceding that probable cause for a warrant existed following the controlled buy, Phillips writes:

> However, instead of securing a warrant, two of the observing officers decided to conduct a []knock and talk. They approached the rear of the residence and, allegedly to their surprise, observed the suspect right where he was last reported by the officer who conducted the controlled buy, specifically, in the rear doorway. They were seen by the suspect, and surprise again, he slammed the door. With the basis to claim exigency now in hand they kicked in the rear door and proceeded to make their arrest and gather evidence.

Phillips contends that there was no indication that there was a threat to any officer, that anyone was trying to flee, that evidence was about to be destroyed, or any other reason justifying immediate action. Phillips further points to the fact "that there were a multitude of law enforcement personnel on scene and one would be available to secure a warrant as others continued to stake out." Consequently, he asserts, "that the knock and talk was nothing more than a process by which to create an exigency and to proceed with a warrantless forced entry into that residence."

¶ 11.   We need not delve into the appropriateness of the officers' determination to conduct a knock and talk or whether a knock and talk creates an exigency because in this case, a knock and talk was never actually accomplished.[5] Instead, we conclude that Phillips, not the police, created the exigency that resulted in the warrantless search when, after seeing the police

---

[5] The issue of whether the police impermissibly create exigent circumstances by knocking on the door has divided the United States Courts of Appeals. The Second Circuit has held that police do not create exigent circumstances by knocking on a suspect's door reasoning, "when law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." *United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir. 1990) (en banc), *cert. denied*, 498 U.S. 1119 (1991). However, the Third, Fifth, and Seventh Circuits have held to the contrary. *See United States v. Ellis*, 499 F.3d 686, 691–92 (7th Cir. 2007); *United States v. Coles*, 437 F.3d 361, 367 (3d Cir. 2006); *United States v. Richard*, 994 F.2d 244, 249–50 (5th Cir. 1993).

The dissent contends that the police created exigent circumstances at the moment when they began approaching the home to conduct a knock and talk. *See* dissent, ¶¶ 20, 23 n.2 (quoting *United States v. Rosselli*, 506 F.2d 627, 630 (7th Cir. 1974), for the proposition that the time for examining the existence of exigent circumstances encompasses " 'the agents' conduct during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the front door' "). *Rosselli*, however, was decided nearly thirty-five years ago, and although it is persuasive authority, it is not binding on this court. *See State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) ("Certainly, the United States Supreme Court's determinations on federal questions bind state courts. It is clear, however, that determinations on federal questions by either the federal circuit courts of appeal or the federal district courts are not binding upon state courts.").

outside the residence, Phillips retreated into the residence and shut the door after the police ordered him to stop. Those actions created the exigency in this matter —namely, the risk that evidence would be destroyed.[6]

¶ 12.   The reasoning set forth in *Hughes* is persuasive in this regard. There, officers knocked on the door of Hughes' apartment following a report of trespassing at an apartment complex. *Id.*, 233 Wis. 2d 280, ¶¶ 2–4. They received no response despite hearing loud music and voices inside. *Id.* at ¶ 4. Given the number of people they believed were inside the apartment, the officers called for back up and decided to wait for its arrival before knocking again. *Id.* As the officers waited in the hallway, the apartment door was unexpectedly opened; the officers were confronted with the strong

---

[6] The dissent contends, "I do not mean to suggest that further investigation of an already completed crime as to which the police have probable cause for arrest and/or a search is necessarily inappropriate," dissent, ¶ 26 n.3, and yet, this seems to be the implication. The exact amount of information needed to establish probable cause is not always an obvious and easy determination for police officers to make, and we do not think it wise to discourage police officers in their efforts to seek out and to obtain additional information as part of an investigation. We recognize that the lead detective in this case did not specifically state that further investigation was the motivation behind his decision to conduct a knock and talk. *See* dissent, ¶ 26 (quoting the detective's testimony). Notwithstanding, a knock and talk is an investigative technique. *See generally* Craig M. Bradley, *"Knock and Talk" and the Fourth Amendment*, 84 Ind. L.J. 1099, 1099 (2009) (explaining that knock and talk "is a powerful investigative technique" where "police go to people's residences, with or without probable cause, and knock on the door to obtain plain views of the interior of the house, to question the residents, to seek consent to search, and/or to arrest without a warrant, often based on what they discover during the 'knock and talk' ").

odor of marijuana emanating from the apartment; and Hughes' sister, upon seeing the police, tried to slam the door. *Id.*, ¶ 5. In response, the police, concerned that the people inside of the apartment would destroy drug evidence if they did not undertake an immediate entry, prevented Hughes' sister from closing the door and entered the apartment. *Id.* On review of the order denying Hughes' motion to suppress, the court concluded that the officers' warrantless entry was justified based on the risk that evidence would be destroyed. *See id.*, ¶ 26.

¶ 13.   In *Hughes*, the officers, who were entitled to be in the public hallway outside Hughes' apartment and to approach her door in order to investigate the trespass complaint, upon discovering evidence of illegal activity taking place within the apartment, were faced with a changed situation once their presence was revealed. *See id.*, ¶ 5. Similarly here, officers were entitled to approach Phillips' residence in order to effectuate a knock and talk. As was the situation in *Hughes*, the exigency that resulted when Phillips saw the officers and retreated into the residence was the possibility that drugs would be destroyed by Phillips or other individuals who may have been present in the residence after they were aware of police presence outside the door.[7] *See id.*, ¶ 26 ("But the greater exigency in this case is the possibility of the intentional and organized destruction of the drug

---

[7] During the suppression motion hearing, the undercover officer who made the controlled buy testified that he heard voices in the front of the house while he was making the purchase in the kitchen. It is not clear from the record whether this information was relayed to the other officers present at the scene. A police report prepared by the lead detective reflects that three other men were located in the living room of the residence following the police entry.

by the apartment occupants once they were aware of the police presence outside the door."). Just as the *Hughes* court concluded, after first noting the highly destructible nature of marijuana and other drugs, we conclude: "It is not unreasonable to assume that a drug possessor who knows the police are outside waiting for a warrant would use the delay to get rid of the evidence." *See id.*

¶ 14. *State v. Garrett*, 2001 WI App 240, 248 Wis. 2d 61, 635 N.W.2d 615, further supports our conclusion that there was a risk that evidence would be destroyed once Phillips became aware of the police presence outside of his residence. In *Garrett*, faced with circumstances akin to those presently at issue, the court concluded that the warrantless entry into Garrett's apartment was justified where officers had received information regarding a drug transaction in the apartment minutes before, combined with Garrett's own acts of opening the door holding a bag of cocaine, slamming the door shut after seeing the undercover detective, and then failing to answer the door, because it was reasonable to believe that Garrett identified the detective as a police officer, creating an incentive for him to destroy evidence. *Id.*, ¶ 18; *see also United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 907 (1991) (holding the agents could reasonably conclude from the defendants' hurried actions and furtive looks that the defendants were either aware or afraid that someone was watching them such that the destruction or removal of some portion of the narcotics was therefore a possibility that justified the warrantless entry into the home based on exigent circumstances).

¶ 15. Because they had probable cause and because exigent circumstances existed to justify the offic-

ers' warrantless search, we conclude the trial court properly denied Phillips' motion to suppress.[8]

*B. The trial court properly denied Phillips' postconviction motion without a hearing.*

▆▆

¶ 16.   Phillips also appeals the order denying his motion for postconviction relief. He claims that the trial court erred when it denied his ineffective assistance of counsel claim without a hearing under *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). The claim of ineffective assistance arises out of Phillips' criticism of his trial counsel's conduct during the suppression motion hearing. Specifically, Phillips faults his trial counsel for failing to subpoena the presence of the detective "who wrote the key and controlling report" in this matter and for failing to challenge the continued misrepresentations by the prosecutor during the hearing "as to the placement of Mr. Phillips 'outside' the house and 'turning and running' back into the house."

▆▆ ▆▆

¶ 17.   A motion claiming ineffective assistance of counsel does not automatically trigger a right to a *Machner* testimonial hearing; no hearing is required if

---

[8] In light of this resolution, we do not discuss the additional arguments raised by the State in support of the trial court's denial of Phillips' motion to suppress. Namely, that "police did not create the exigent circumstances as they were in continuous hot pursuit of Phillips when they entered the residence without a warrant" and that "[t]he strong policy of promoting compliance with police orders justified hot pursuit of Phillips after he defied their orders to stop." *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (If this court affirms a trial court order based on one ground, it need not address others.).

the defendant fails to allege sufficient facts in his or her motion, if the defendant presents only conclusory allegations or subjective opinions, or if the record conclusively demonstrates that he or she is not entitled to relief. *State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50 (1996). In reviewing the trial court's denial of an evidentiary hearing, we apply a two-part test. *Id.* at 310. We must determine whether the motion, on its face, alleges facts entitling Phillips to relief. *See id.* If the motion fails to allege sufficient facts, the trial court has the discretion to deny the motion without an evidentiary hearing. *Id.* at 310–11. This discretionary decision will only be reversed if the trial court erroneously exercised that discretion. *Id.* at 311.

¶ 18. In his brief to this court, Phillips does not explain what the detective "who wrote the key and controlling report" in this matter would have offered beyond the testimony provided by the two officers who did appear at the hearing. By leaving us to speculate as to what the detective would have offered, Phillips provides insufficient objective facts to support his conclusory allegation that trial counsel was ineffective. In his motion to the trial court, Phillips argued that trial counsel was ineffective because "the Court was not assisted in being provided the true facts when defense counsel did not subpoena [the] detective . . . and introduce the 'in the doorway testimony' (i.e., that Phillips was standing in the doorway of the residence when the police first saw him on their way to conduct the knock and talk)." (Parenthetical added.) However, if this is the testimony that Phillips believes would have been offered by the detective "who wrote the key and controlling report," it is insufficient to entitle Phillips to a *Machner* hearing because it would have been repetitive to that offered by an officer who testified at the hearing

593

that Phillips was first observed "at the back door" of the residence. Moreover, as discussed in the following paragraph, it would not have impacted the trial court's decision to deny his postconviction motion without a hearing.

¶ 19.   Phillips further claims that his counsel was ineffective for failing to challenge the continued misrepresentations by the prosecutor during the hearing "as to the placement of Mr. Phillips 'outside' the house and 'turning and running' back into the house." We conclude that this is likewise insufficient to warrant a *Machner* hearing. In its postconviction order, the trial court made clear that where Phillips was located was not material to its determination that Phillips' actions created exigent circumstances.[9] We agree that whether he was inside or outside of the house, Phillips, who,

---

[9] Phillips argues:   "The facts relied upon by the Trial Court Judge in rendering his decision which justified the entry, were clearly in error. Mr. Phillips was not in his backyard nor did he run into the house from the backyard as the Judge noted." In its supplemental statement of facts, the State quotes from the complaint and from the testimony of an officer involved in the search, placing Phillips "in the doorway" and "at the back door." Notwithstanding, on more than one occasion in its brief, the State references Phillips as being located outside the house and never directly addresses Phillips' contention that the trial court erred in placing him there.

In ruling on the suppression motion, the trial court recited the facts it deemed relevant, which included a finding that Phillips was outside of the home when the police approached him. This finding was in error and may have been due, in part, to the erroneous representations made by the prosecutor during his argument at the suppression hearing that Phillips was standing outside the residence.

The trial court addressed the error in its order denying Phillips' postconviction motion, stating:

after seeing the police, retreated into the house and shut the door, created exigent circumstances that justified the warrantless search. As analyzed above, the exigency was the potential destruction of evidence, not the hot pursuit of a suspect. Therefore, the fact that Phillips' trial counsel failed to challenge the continued misrepresentations is of no consequence as it would not have impacted the trial court's conclusion. Accordingly, we hold that the record conclusively shows Phillips is not entitled to relief. We are satisfied that the trial court's decision to deny Phillips' postconviction motion without holding a *Machner* hearing reflects a proper exercise of discretion.

*By the Court.*—Judgments and order affirmed.

¶ 20. KESSLER, J. (*concurring in part, dissenting in part*). I concur with the majority's conclusion that the trial court did not erroneously exercise its discretion when it denied Phillips' motion for postconviction relief alleging ineffective assistance of counsel. However, I respectfully dissent from the majority's decision affirming the denial of the motion to suppress because I conclude that the officers' decision to approach the home to conduct a knock and talk is relevant, *see* majority, ¶ 11, and created the exigent circumstances upon which justification for the warrantless entry into Phillips' home was based.

> The court agrees [with the State] that it does not matter if the defendant was standing in the doorway of the home or outside. His actions created exigent circumstances which made it appropriate for the police to enter the home to prevent the destruction of evidence. *Defendant's argument with respect to trial counsel is rejected.* What defendant claims counsel should have done would not have altered the court's decision at the conclusion of the suppression hearing.

This directly refutes Phillips' contention that "the fact that [he] was approached 'outside' his residence played a most key role."

¶ 21.    To obtain a warrant, an officer must prepare an affidavit describing facts to establish probable cause for the search or arrest, and particularly describing the place to be searched and the person(s) or property to be seized.[1] From the practical perspective of a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime," *see Johnson v. United States*, 333 U.S. 10, 14 (1948), it is understandable that obtaining a warrant is an inconvenient addition of paperwork that slows the progress of an investigation. From the perspective of the drafters of our constitutions, these inconveniences to law enforcement were outweighed by the importance of the right of all persons to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," *see* U.S. CONST. amend. IV, unless a warrant is approved by a judge or magistrate. Balancing the constitutional preference for privacy of home and body against the reduced efficiency of law enforcement has led to some very narrow judicially construed exceptions to the warrant requirement. This case concerns only one such exception:  the existence of exigent circumstances, which can justify entry without a warrant. Specifically at issue is whether this exception to the warrant requirement applies where the exigent circumstances were created by the acts of law enforcement.

¶ 22.    The majority describes the exigent circumstances as a risk that the evidence (presumably the additional drugs the undercover officer reported seeing

---

[1] *See* WIS. CONST. art. I, § 11, which provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

in Phillips' home) would be destroyed "once Phillips became aware of the police presence outside of his residence." *See* majority, ¶ 14. There is no dispute that the reasonable belief that evidence will be destroyed constitutes exigent circumstances that can justify a warrantless entry. *See State v. Kiekhefer*, 212 Wis. 2d 460, 476, 569 N.W.2d 316 (Ct. App. 1997). The question here, however, is whether the police themselves created the risk that evidence would be destroyed when they took affirmative action that made Phillips aware of the police presence outside of his residence, which subsequently allowed the officers to circumvent the requirement that they obtain a warrant to arrest Phillips and to search his home.

¶ 23.   When exigent circumstances are created by law enforcement, the ability to proceed without a warrant is lost. In *State v. Hughes*, 2000 WI 24, 233 Wis. 2d 280, 607 N.W.2d 621, a case relied on by the majority, the Wisconsin Supreme Court recognized that when determining whether exigent circumstances excused the need for a warrant, it is relevant whether "the exigency was created by the police themselves, which would generally not justify a warrantless search of a home."[2] *See id.*, ¶ 28 n.7. Unlike the facts in *Hughes*,

---

[2] Federal law is consistent with Wisconsin's law on exigent circumstances created by police. *See United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006) ("Exigent circumstances . . . do not meet Fourth Amendment standards if the government deliberately creates them."); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir. 1983) ("[A]gents cannot justify their search on the basis of exigent circumstances of their own making."); FEDERAL TRIAL HANDBOOK:   CRIMINAL § 36:16 (4th ed. 2008) ("While exigent circumstances may justify a warrantless search, that is not sufficient ground for a warrantless search if the police manufactured the exigency."); 79 C.J.S. *Searches* § 73 (2006) ("Officers

where "a drug possessor who knows the police are outside waiting for a warrant would use the delay to get rid of the evidence," *see id.*, ¶ 26, there is no evidence that Phillips was aware of the police presence until he saw them approaching his home to conduct the knock and talk.

¶ 24. Even prior to *Hughes*, our supreme court recognized that law enforcement cannot create exigencies to justify a warrantless arrest. In *State v. Smith*, 131 Wis. 2d 220, 388 N.W.2d 601 (1986), the court

cannot create exigent circumstances in order to justify a search or seizure."). In *United States v. Rosselli*, 506 F.2d 627 (7th Cir. 1974), the Seventh Circuit weighed in on this issue. *Rosselli* affirmed an order suppressing evidence obtained after government agents forcibly entered an apartment without a warrant to seize marijuana they feared would be destroyed. *See id.* at 627–28. *Rosselli* explained that the time at which the existence of exigent circumstances must be examined is "the agents' conduct during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the front door." *Id.* at 630. *Rosselli* continued:

> In this case, the evidence does not adequately explain why no attempt to obtain a warrant was made, or why no consideration was given to placing the defendant's apartment under surveillance while an attempt to secure a warrant was being made . . . .
>
> We do not suggest that the emergency which did develop was contrived by the agents. They had a right to pursue their investigation by seeking voluntary cooperation from a suspect. But certainly the emergency which did ensue was foreseeable. Moreover, this type of situation may reoccur repeatedly and might lend itself to too easy a by-pass of the constitutional requirement that probable cause should generally be assessed by a neutral and detached magistrate before the citizen's privacy is invaded. This is the kind of situation in which there is an especially high risk that error may be committed even when officers are acting in the best of faith.

*Id.* (citations and footnotes omitted).

considered a case where the police had made a deliber-
ate plan to go to the defendant's residence and arrest
him without an arrest warrant, although they had
identified him as the perpetrator and determined his
address several hours before they entered his apart-
ment. *See id.* at 232. When they arrived at the
defendant's apartment, there were three squad cars and
a total of seven officers, which was enough, the court
noted, to have staked out all exits while a warrant was
obtained. *Id.* at 234–35. The court concluded that the
arrest was unconstitutional, reasoning:

> The officers' uncertainty regarding [the
> defendant's] whereabouts is not enough to justify a
> warrantless entry into his home. The police cannot
> themselves create the exigency—risk of escape—by
> merely conducting an investigation. If that theory were
> correct, then any time an investigation is conducted,
> the police obviate the need for a warrant.

*Id.* at 234.

¶ 25. Both *Hughes* and *Smith* are instructive in
this case. As the majority notes, the burden was on the
State to demonstrate a basis for the warrantless entry
and search of the home. *See State v. Leutenegger*, 2004
WI App 127, ¶ 12, 275 Wis. 2d 512, 685 N.W.2d 536.
The State elicited testimony from the undercover of-
ficer who bought drugs from Phillips in the home.
Based on that testimony—which was accepted by the
trial court—the following two facts are established.
First, there was probable cause to arrest Phillips, who
had just sold drugs to the undercover officer. Second,
there was probable cause to search the home, where the
undercover officer had seen Phillips with a large plastic
bag of corner cuts of drugs. The record is devoid of any
evidence that the undercover officer believed that
Phillips knew he had sold drugs to an officer, or that

any other officer believed at the time the undercover officer returned from the drug transaction that exigent circumstances existed for any other reason. Indeed, there is no evidence that the officers believed Phillips was aware of the police presence prior to the time they approached his home to conduct the knock and talk. When Phillips saw the officers running toward him, he retreated into his home, closed the door and ran upstairs. There is no evidence police believed Phillips intended to get rid of the drugs in his home *before* the above-described display of police presence.

¶ 26.   The record discloses no reason to further investigate the already completed drug purchase.[3] Specifically, the record is void of even a suggestion of what police hoped to learn in the knock and talk that they did not already know about the crime which had been committed. One officer testified that no reason for the knock and talk was mentioned. Another testified that the decision to instigate a knock and talk was made by two detectives. At the trial, one of these detectives testified why he decided to conduct a knock and talk:   "My intention was to basically conduct a knock and talk, knock on the door. We have a subject inside that I know . . . sold cocaine to an undercover and *to ascertain where he is in the residence and ultimately arrest him.*" (Emphasis supplied.) The detective did not say they were going to request consent to search, ask questions or pursue any other reasonable investigative

---

[3] I do not mean to suggest that further investigation of an already completed crime as to which the police have probable cause for arrest and/or a search is necessarily inappropriate. However, the techniques employed in that further investigation must be chosen carefully so that police conduct which is highly likely to create exigent circumstances is not selected, for this is likely to render the evidence thereby obtained inadmissible.

objective. The detective's explanation leads to no reasonable conclusion but that his intent was to arrest Phillips without a warrant.

¶ 27. Even if the officers' goal was conducting a knock and talk investigation, as opposed to arresting Phillips and searching his home without warrants, the time and manner of this attempted knock and talk were unreasonable, given the high probability that exigent circumstances would develop when numerous officers approached Phillips' home ten minutes after he sold drugs to an undercover officer. *See United States v. Rosselli*, 506 F.2d 627, 630 (7th Cir. 1974) ("This is the kind of situation in which there is an especially high risk that error may be committed even when officers are acting in the best of faith.").

¶ 28. In the absence of a reasonable justification for the further police actions, I cannot join the majority's conclusion that "it was reasonable for the police to conduct a 'knock and talk' after the undercover officer exited Phillips' house having purchased drugs from Phillips." *See* majority, ¶ 2. I fear that the majority opinion in this case creates a road map for avoiding the tedium of obtaining warrants by endorsing law enforcement creation of exigent circumstances. I conclude that the officers' actions, in announcing their presence as they did, predictably and actually created the exigent circumstances (i.e., the risk that evidence would be destroyed) that did not previously exist. Because "the exigency was created by the police themselves," I conclude that the warrantless search of the home was unconstitutional. *See Hughes*, 233 Wis. 2d 280, ¶ 28 n.7.

¶ 29. My conclusion is consistent with the court's reasoning in *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986). In *Munoz-Guerra*, Drug Enforce-

ment Agency agents acted on an anonymous tip that a condominium contained marijuana, money, guns and a briefcase containing white powder. *Id.* at 296–97. After observing a woman exit the condominium carrying a briefcase like that described by the tipster, one agent walked along the exterior of the condominium and saw on the window sill "the butt of a large marijuana cigarette and a gray box in which scales are customarily packed." *Id.* at 297. He also saw a bag of white powder on the floor inside the condominium. *Id.* Two agents climbed a fence that enclosed a small patio on the side of the condominium and knocked on the glass patio door. *Id.* When the defendant appeared at the door, the agents "ordered him to put his hands on the glass . . . and then to reach down and open the door." *Id.* When the defendant indicated he would have to go get the key, the agents became concerned that he might destroy evidence or get a weapon, so they kicked in the door and entered the condominium. *Id.* They conducted a security search and discovered drugs and guns. *Id.* The agents' entry was held to be unconstitutional and the evidence was suppressed. *Id.* at 298–99. The court's reasoning is applicable here:

> Our past opinions have consistently emphasized that *without reason to believe that a criminal suspect was aware of police surveillance, the mere presence of firearms or destructible, incriminating evidence does not create exigent circumstances.* In the instant case, it was possible to secure the condominium covertly from the outside. There was no basis, on these facts, for believing that resort to a magistrate would have created risks of a greater magnitude than those which are present in any case where the police have probable cause but delay entry pending receipt of a warrant. Had the police's necessary efforts to secure the premises been visible to the inhabitants or had there been reason

602

to believe that someone within the condominium was in need of immediate succor, the government's position would have merit. The government's argument that swift and immediate action may have minimized risks to human life and physical evidence, however, misses the mark. Our fourth amendment jurisprudence contemplates that protection of individual rights of privacy will be achieved at some cost to society's interest in public safety; and, in the ordinary case the risk that a criminal suspect will become aware of covert surveillance is deemed insignificant in contrast to the more substantial benefits we all derive from the procedural safeguards of judicial process.

*Id.* (emphasis added; citations and footnote omitted).

¶ 30.　For the foregoing reasons, I would reverse both the order denying Phillips' motion to suppress and the judgment of conviction and remand for further proceedings.