PER CURIAM.
¶1 Desmond Dejuan Laster appeals the circuit court's order denying his motion for postconviction relief brought pursuant to WIS. STAT. § 974.06 (2017-18)[1] . Laster argues: (1) he received ineffective assistance of trial counsel; (2) he received ineffective assistance of appellate counsel; (3) he is entitled to a new trial based on newly discovered evidence; and (4) the trial judge was biased. We reject these arguments. Accordingly, we affirm.
¶2 Laster was convicted after a jury trial of one count of arson, as a party to a crime, four counts of first-degree intentional homicide, while armed, as a party to a crime, and unlawfully possessing a firearm as a previously convicted felon. We explained the facts of these horrific crimes when we decided Laster's direct appeal:
In the early morning on February 26, 2010, Laster, Anthony Barnes, and Brittney Robertson went to the duplex where Rachel Thompson lived in the upper unit with her four- and three-year-old sons and her newborn baby. Robertson also lived there, but had been told to move out. The group robbed, beat, shot at, and stabbed Thompson to death. They also duct-taped the boys' hands and feet and duct-taped plastic bags over the boys' heads. They set the home on fire, took the baby, and left. Thompson and her two older sons died.
The downstairs residents awoke to smoke and fire at 4:40 a.m. and called for help. The desk clerk at a nearby hotel said Laster, Barnes, Robertson and a baby checked into the hotel at 5:15 a.m. The desk clerk saw Robertson leave the hotel with Laster and the baby at 12:15 p.m. Videotape from the hotel security cameras confirmed the clerk's identifications. The baby was found abandoned at a nearby church at 12:55 p.m. Sometime that afternoon, Robertson's cousin, Brad Hoeppner, called her cell phone. Hoeppner said Robertson confessed to killing Thompson and her kids with a "couple other people" for "some guy that she was seeing." She also told Hoeppner that she had left the baby at the church. Later the same day, Robertson was found shot in the head. Two witnesses saw two black men fleeing the scene of the shooting and getting into a white Pontiac. A bullet and cartridge casing found where Robertson was shot matched the bullet and cartridge casing found at the duplex.
State v. Laster , No. 2012AP1739-CR, unpublished slip op. ¶¶2-3 (WI App Apr. 2, 2013).
¶3 Laster first argues that he received constitutionally ineffective assistance from his trial counsel, Patrick Flanagan. Laster contends that Flanagan should have objected because the prosecutor "coerced defense witnesses not to testify." Laster also contends that Flanagan should have objected because the circuit court erred in allowing potential defense witnesses to assert their Fifth Amendment privilege not to testify.
¶4 To understand these claims, we must first set forth the facts underlying them. Laster had telephone conversations from jail with five potential alibi witnesses the weekend before their proposed trial testimony. The calls were recorded. On Monday, the prosecutor informed the circuit court that he had tapes of the telephone calls Laster made to these witnesses. The prosecutor alerted the court that "[s]ome of those phone calls can be interpreted as the defendant soliciting perhaps false testimony."
¶5 The State aptly summarizes the situation:
This put the circuit court in a difficult position. Theoretically, it could have excluded their testimony because Laster tampered with the witnesses in violation of the sequestration order and tried to suborn perjury from them. The court and counsel arrived at a better solution: rather than have the court and prosecutor examine them directly, the court decided to appoint attorneys for each witness and let them discuss the individual's situation with the protections and confidentiality of the attorney-client relationship. The fact that all five witnesses decided to invoke their privilege against self-incrimination was not due to coercion or intimidation by the prosecutor or the circuit court, but due entirely to the compromised position Laster's misconduct put them in.
¶6 Despite Laster's argument to the contrary, the prosecutor did not coerce the defense witnesses not to testify. The prosecutor simply informed the circuit court about Laster's telephone conversations with the witnesses. The circuit court then appointed counsel for the potential witnesses so they could make fully informed decisions about how to proceed in a manner that protected their legal rights. Moreover, the circuit court acted properly in allowing the witnesses to assert their Fifth Amendment privilege not to testify. Therefore, trial counsel did not render ineffective assistance. See State v. Golden , 185 Wis. 2d 763, 771, 519 N.W.2d 659 (Ct. App. 1994) (no ineffective assistance of counsel for failing to object to meritless claims).
¶7 Laster next argues that he received constitutionally ineffective assistance from his appointed appellate counsel, Diane Erickson. A claim of ineffective assistance of appellate counsel will lie only if the defendant shows that the issues he believes counsel should have raised are clearly stronger than the issues counsel raised. See State v. Starks , 2013 WI 69, ¶¶59-60, 349 Wis. 2d 274, 833 N.W.2d 146. "A motion claiming ineffective assistance of [appellate] counsel does not automatically trigger a right to a [postconviction] testimonial hearing." State v. Phillips , 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157. "[N]o hearing is required if the defendant fails to allege sufficient facts in his or her motion, if the defendant presents only conclusory allegations or subjective opinions, or if the record conclusively demonstrates that he or she is not entitled to relief." Id.
¶8 Erickson argued on direct appeal that: (1) the questions the prosecutor asked defense witness S.H. about child abuse at her day-care center were irrelevant and unfairly prejudiced her credibility; (2) admission of evidence that Laster called his mother derogatory names improperly prejudiced the jury against him; and (3) the circuit court should have granted Laster's motion for mistrial because the prosecutor asked S.H. about Laster's lawyer "leading" S.H. through her testimony and the prosecutor improperly played parts of the recorded jail phone conversations that discussed his lawyer's representation.
¶9 Laster asserts that Erickson should have argued on direct appeal that: (1) he received ineffective assistance of trial counsel; and (2) the circuit court erred when it appointed counsel for the five potential defense witnesses who ultimately decided not to testify.
¶10 We previously rejected Laster's claim that he received ineffective assistance of trial counsel. As for the second issue, Laster has not persuasively argued that this issue is clearly stronger than the issues Erickson did, in fact, raise on direct appeal. Laster contends that two of the issues raised on direct appeal were weaker than the counsel appointment issue because they "succumbed to a harmless error evaluation." Regardless of whether we concluded that an error was harmless, Laster has not explained why the counsel appointment claim is clearly stronger than the issues we rejected during Laster's direct appeal. See Starks , 349 Wis. 2d 274, ¶60. Laster's allegation that he received ineffective assistance of counsel from appellate counsel is therefore insufficient on its face. Moreover, Laster's argument that the circuit court erred in appointing counsel for the defense witnesses is meritless. Therefore, the circuit court properly exercised its discretion in denying Laster's motion without a hearing. See State v. Bentley , 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996) (the defendant is not entitled to a hearing on a postconviction motion if the defendant presents only conclusory allegations).
¶11 Laster next argues that he is entitled to a new trial based on an affidavit he recently obtained from Derek Murray, a prison inmate. In the affidavit, Murray states that Barnes told him (Murray) that Barnes committed the murders and he lied about his co-defendant (Laster) being involved to avoid taking all the blame.
¶12 The affidavit, and any testimony Murray might provide consistent with the affidavit, would not be admissible because it is hearsay. See WIS. STAT. § 908.01(3). The testimony is offered for the truth of the matter asserted; it is offered to show that Barnes committed the homicides without Laster's assistance. Laster has not offered an affidavit from Barnes indicating that Barnes would testify that he committed the murders without Laster's assistance. There is no indication that Barnes would so testify.[2] Therefore, Laster has not shown that there is newly discovered evidence supporting his motion for a new trial.
¶13 Finally, Laster argues that the trial judge displayed bias against him. Laster points to statements by the trial judge regarding the phone calls he made from jail telling witnesses to lie. Outside the jury's presence, the trial judge said: "[W]e're walking a fine line here especially in light of the phone calls that were made the other day because Mr. Laster has put himself in a precarious position." The judge also stated:
I'm not in any way making a determination of the truth of any of the matters that were discussed, that's not my point and that's not my position with regard to not being allowed to call Miss Yarbrough as well as other witnesses in this case[.] [T]he Court is of the opinion that this is of Mr. Laster's own doing, that he is the one that initiated this set of circumstances that has caused these witnesses to fear for prosecution for possibly perjuring themselves on the stand.
....
... Mr. Laster is the one that has put these issues in motion by making the phone calls over the weekend .... And the reason why I'm mentioning that is so there is no mistake about who is to blame for him not being able to call these witnesses. It's not the State.
¶14 "There is a presumption that a judge has acted fairly, impartially, and without prejudice." State v. Herrmann , 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. "The presumption is rebuttable, placing the burden on the party asserting the bias to show that bias by a preponderance of the evidence." Id. The trial judge explained that Laster's phone calls created a potential legal problem for the witnesses because Laster told them to lie. These statements do not suggest bias and do not overcome the presumption that the trial judge acted fairly. We reject Laster's argument.
By the Court .-Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23 (1(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

To the contrary, Laster asserts that Murray told him that Barnes deliberately lied about his involvement to avoid being the only person to take blame. Laster also states that there is no indication that Barnes plans to recant his statement implicating Laster.