PER CURIAM.
¶1 Willie Dorice Ford, Jr., pro se , appeals his judgment of conviction entered on a jury's verdict finding him guilty of delivery of heroin weighing more than fifty grams, as a party to a crime. He also appeals an order of the circuit court denying his postconviction motion.
¶2 Ford argues that he is entitled to a new trial based on newly discovered evidence; namely, affidavits from his mother and sister indicating that Ford had not been renting a room at his mother's residence at the time it was searched, and that the heroin found there belonged to someone else, who is now deceased. Ford also argues that the circuit court erred in denying his pre-trial motion to suppress evidence discovered during a strip search of Ford; Ford asserts that it was an illegal body cavity search as opposed to a strip search.
¶3 Ford further argues that the circuit court demonstrated bias against him at sentencing in its comments regarding Ford's role in a homicide for which he was acquitted. Finally, Ford contends that his trial counsel was ineffective for failing to call his mother and sister to testify at trial, failing to pursue an interlocutory appeal after his motion to suppress was denied, and failing to object to the circuit court's comments about the homicide during his sentencing.
¶4 The circuit court denied Ford's postconviction motion without a hearing. We affirm.
BACKGROUND
¶5 The charge against Ford was the result of an investigation into a heroin trafficking organization after the overdose death of Timothy Ronan in December 2014 in West Allis. Ford was suspected of being the head of the organization, with several "runners" serving under him. The runners would allegedly accompany Ford on trips to Chicago to purchase the heroin, which would then be sold locally in the Milwaukee area, with Ford receiving a portion of the profits.
¶6 In January 2015, West Allis police used a confidential informant to arrange a controlled buy of heroin from Ford. Ford was arrested, but no heroin was recovered from either Ford or his vehicle. Subsequently, detectives learned from one of Ford's co-conspirators that Ford had a "significant amount" of heroin concealed in his rectum during that arrest that was not found by police.
¶7 On March 16, 2015, while conducting surveillance of Ford, detectives observed him conducting a suspected drug transaction from his vehicle. They stopped Ford, and in their search of his vehicle, police recovered 2.98 grams of heroin, several cell phones, and $ 1230 in cash. Ford and one of his runners were arrested, along with a female who was driving them.
¶8 Officers then executed a search warrant on the home of Ford's mother, Michelle Oldham. Oldham indicated that Ford rented one of the bedrooms at the residence from her. In that bedroom, police discovered a container with 10.03 grams of heroin. They also found seven cell phones, pictures of Ford with his associates, and a pair of Nike Airs in size ten-the size shoe Ford was wearing when he was arrested. In the dining room of the residence, police found a man's wallet containing a Social Security card and a credit card belonging to Ford.
¶9 The police also searched packed moving boxes in the dining room, as Oldham had indicated that Ford and his sister were planning to move out of the residence. In those boxes, police discovered three more cell phones, $ 4050 in cash, sandwich baggies, and a digital scale.
¶10 Shortly after his arrest, Ford posted bail.
¶11 Subsequently, in addition to the charge of delivery of heroin, police charged Ford with first-degree reckless homicide in the death of Ronan. Police continued their surveillance of Oldham's residence in an attempt to locate Ford and execute an arrest warrant for the homicide. On May 15, 2015, police observed Ford arrive at the residence in a vehicle and conduct a suspected drug transaction. Ford was arrested and transported to the West Allis Police Station.
¶12 Police then conducted a strip search of Ford. The officer performing the search observed a portion of a plastic sandwich baggie "protruding from Ford's rectal area." As a result, police obtained a body cavity search warrant, which was executed that evening at Froedtert Hospital. A doctor removed the baggie and turned it over to police; it contained 11.48 grams of heroin.
¶13 The trial court[1] joined the homicide case with the drug charges. Prior to trial, Ford filed a motion to suppress the evidence recovered from his rectum at Froedtert. He argued that the initial strip search conducted by West Allis police was actually a "visual body cavity search" because police required Ford to squat and pull his buttocks apart to show his rectum. He contended that this search was illegal pursuant to State v. Wallace , 2002 WI App 61, ¶29, 251 Wis. 2d 625, 642 N.W.2d 549, abrogated by State v. Popenhagen , 2008 WI 55, 309 Wis. 2d 601, 749 N.W.2d 611, where this court distinguished a "visual body cavity search" from a standard strip search. Id. (emphasis added).[2]
¶14 After hearing testimony from the West Allis police officer involved in the strip search, the trial court rejected Ford's argument. The court first pointed out that WIS. STAT. § 968.255(1)(b) permits a detainee's buttocks and anus to be viewed during a strip search. Furthermore, the court stated that according to the description of Ford's stance when the baggie was discovered, the "bagg[ie] was protruding from the cleft between the butt cheeks," so what was actually being viewed by police was "butt cheeks and a bagg[ie] sticking out and not anything further." In other words, the officer conducting this search did not view Ford's rectum.
¶15 Moreover, the trial court noted that the medical records from Froedtert regarding the search stated that there were no "foreign bodies ... seen within the pelvis and abdomen," which the court interpreted to include the rectum. In short, the court found that there was no evidence that the baggie of heroin was actually in Ford's rectum. As a result, the court found that the West Allis police officers performing the strip search had not violated WIS. STAT. § 968.255(1)(b), and denied Ford's motion to suppress.
¶16 The matter proceeded to trial in February 2016. A jury convicted Ford of the charge for delivery of heroin, but acquitted him on the first-degree reckless homicide charge.
¶17 Ford was sentenced in April 2016. At the sentencing hearing, the trial court discussed the gravity of the offense, describing it as "a very grave set of circumstances ... a lot of heroin," and stating that Ford's role as a "professional operator" was accurately characterized by the State as that of a "predator." The court also described Ford as having a "pretty negative" character in that he took no responsibility for his conduct and showed no remorse. The court further noted that Ford's past performance while on supervision was "terrible." The court stated that it considered these factors in its imposition of Ford's sentence.
¶18 Additionally, the trial court discussed Ford's acquittal of the first-degree reckless homicide charge. The court stated that in spite of his acquittal, it nevertheless believed Ford was "responsible for the death of Mr. Ronan; and if not you, one of your associates." The court further opined that even though the jury had not found him guilty beyond a reasonable doubt, "I would have found you guilty."
¶19 Ultimately, the trial court imposed a forty year sentence, bifurcated as twenty-five years of initial confinement and fifteen years of extended supervision.
¶20 Ford pursued postconviction relief, opting to discharge his attorney and proceed pro se. Ford then filed a motion in September 2017 seeking to have his sentence vacated due to bias demonstrated by the trial court, citing the court's comments at sentencing relating to Ford's acquittal of the first-degree reckless homicide charge. He further asserted that his trial counsel was ineffective for failing to object to those comments at the sentencing hearing.[3]
¶21 The trial court denied Ford's motion. It noted that at the sentencing hearing it had explained to Ford that, pursuant to well-established case law, the court could consider the first-degree reckless homicide charge for purposes of sentencing. Thus, the court declared that its comments at sentencing regarding that charge were "not a confession of bias but rather an exercise of the court's indisputable authority under the law."
¶22 Ford appealed that decision. However, he voluntarily dismissed that appeal, instead filing a "supplemental" postconviction motion in circuit court in January 2018, asserting newly discovered evidence. This purported new evidence was an affidavit submitted by his mother, Oldham, stating that Ford was not living at her residence at the time the search warrant was executed; rather, Antonio Ewing[4] lived there. Ford also submitted an affidavit from his sister, Samantha Ford, who stated that any drugs found at the residence belonged to Ewing. Ford contended that this new evidence would contradict the testimony of the police detective who had testified that Oldham had told him Ford lived there. Ford further asserted that his trial counsel was ineffective for failing to call Oldham or Samantha to testify at his trial and impeach the detective's testimony.
¶23 The postconviction court[5] denied Ford's supplemental motion. It found that neither affidavit satisfied the elements for granting a new trial based on newly discovered evidence because they were "merely an attempt to retry the credibility of [the detective] which, in light of the totality of the evidence, would not have made a dent in the outcome of this case." It further concluded that Ford's ineffective assistance claim did not state a sufficient basis for relief and thus did not require an evidentiary hearing. This appeal follows.
DISCUSSION
Newly Discovered Evidence Claim
¶24 We first address Ford's argument in his supplemental postconviction motion that the affidavits he submitted from his mother and sister are newly discovered evidence warranting a new trial. "The decision to grant or deny a motion for a new trial based on newly[ ]discovered evidence is committed to the circuit court's discretion." State v. Plude , 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. "A circuit court erroneously exercises its discretion when it applies an incorrect legal standard to newly[ ]discovered evidence." Id.
¶25 In order to warrant a new trial, newly discovered evidence must meet the following criteria: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." Id. , ¶32 (quoting State v. McCallum , 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997) ). "If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial." McCallum , 208 Wis. 2d at 473.
¶26 The affidavit of Ford's mother, Oldham, states that Ewing-not Ford-was living at her residence at the time the search warrant was executed. This contradicts her statement to West Allis police at the time the warrant was executed; she had said at that time that Ford rented a room at her residence, but in her affidavit she disputes making that statement. The affidavit of Ford's sister, Samantha, states that Ford was not living with her at the time of the execution of the search warrant, and any drugs found during the search belonged to Ewing.
¶27 The postconviction court rejected Ford's argument. It found that "nothing set forth in the two affidavits would have been reasonably probable to acquit Ford on the drug charge given the overwhelming evidence of his involvement with the delivery of more than fifty grams of heroin." It noted in particular that Samantha's affidavit, declaring that Ford was not living with her at the time of the search, failed to provide information regarding where Samantha was living at that time. In short, the court held that the affidavits did not meet the final element for newly discovered evidence. See id .
¶28 Furthermore, the postconviction court pointed out that the purpose of these affidavits was to discredit the testimony of the detective who spoke with Oldham at the time of the search. That detective testified at Ford's trial and was cross-examined by Ford's trial counsel. "Evidence which merely impeaches the credibility of a witness does not warrant a new trial on this ground alone." Greer v. State , 40 Wis. 2d 72, 78, 161 N.W.2d 255 (1968).
¶29 We conclude that the postconviction court properly applied the correct legal standard for assessing newly discovered evidence in its decision. See McCallum , 208 Wis. 2d at 473. Thus, it did not erroneously exercise its discretion in rejecting Ford's claim. See Plude , 310 Wis. 2d 28, ¶31.
Motion to Suppress
¶30 Ford maintains that the trial court erred in denying his motion to suppress the evidence recovered from his body on the ground that the strip search conducted by police was actually an illegal body cavity search. In our review of a motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts de novo. " State v. Eason , 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.
¶31 The appropriate procedures and requirements for strip searches are set forth in WIS. STAT. § 968.255. That statute defines "strip search" as "a search in which a detainee's genitals, pubic area, buttock or anus ... is uncovered and ... exposed to view[.]" Sec. 968.255(1)(b). If the detainee will be "incarcerated, imprisoned, or otherwise detained in a jail," the person conducting the strip search may not touch those areas while exposed. Id.
¶32 Ford does not allege that the officer conducting the strip search touched him. Rather, he argues that this court's holding in Wallace , in which a "visual body cavity search" was distinguished from a standard strip search, supports suppression of the evidence. See id. , 251 Wis. 2d 625, ¶29. Ford contends that the officer conducting the strip search saw his rectum-a body cavity-when he instructed Ford to pull his buttocks apart.
¶33 In the first place, Wallace has been overruled by our supreme court, and therefore no longer holds any precedential value. See Blum v. 1st Auto & Cas. Ins. Co. , 2010 WI 78, ¶42, 326 Wis. 2d 729, 786 N.W.2d 78. Thus, Ford's argument relating to a "visual body cavity search" has no valid legal support.
¶34 Furthermore, this court has previously pointed out that WIS. STAT. § 968.255"enumerates specific remedies for its violation"-a fine or imprisonment, as well as leaving open the potential for civil damages or injunctive relief. State v. Minett , 2014 WI App 40, ¶10, 353 Wis. 2d 484, 846 N.W.2d 831 ; see also § 968.255(4) - (5). In other words, claiming a violation of the statute, without any allegations of constitutional violations, "provides no basis for a suppression motion." Minett , 353 Wis. 2d 484, ¶10. Therefore, Ford's motion to suppress would fail even if there was a statutory violation.
¶35 In any event, the trial court found that the officer conducting the strip search followed the guidelines of WIS. STAT. § 968.255 -viewing only those body parts permitted by the statute, with no touching. In fact, the court noted that it was hard to "imagin[e] how one could visualize a rectum without touching a body." Therefore, the court held that there was no statutory violation here. These findings are supported by the record, and thus are not erroneous.
¶36 As for the second step of our inquiry regarding a motion to suppress-applying constitutional principles to the facts-there are no constitutional arguments presented here. As the trial court recognized in deciding Ford's suppression motion, he does not argue that the search was not constitutionally valid due to a lack of probable cause. Therefore, the trial court did not err in denying Ford's motion to suppress.
Judicial Bias Claim
¶37 Ford reiterates his claim that the trial court's comments at his sentencing hearing regarding the first-degree reckless homicide charge for which he was acquitted is indicative of judicial bias. "There is a presumption that a judge acted fairly, impartially, and without prejudice." State v. Herrmann , 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772. "A defendant may rebut the presumption by showing that the appearance of bias reveals a great risk of actual bias." Id. "Such a showing constitutes a due process violation." Id. There are two inquiries courts have used to determine judicial bias: a subjective or an objective approach. Id. , ¶26. The subjective approach is based on " 'the judge's own determination of his or her impartiality[.]' " Id. (citation omitted).
¶38 In Wisconsin, a sentencing court may consider not only "uncharged and unproven offenses," but also "facts related to offenses for which the defendant has been acquitted" when imposing a sentence. State v. Sulla , 2016 WI 46, ¶32, 369 Wis. 2d 225, 880 N.W.2d 659 (citation and one set of quotation marks omitted). The trial court explained this to Ford at the time of sentencing, as well as in its decision denying his postconviction motion. As a result, the court determined that its comments at sentencing were "not a confession of bias but rather an exercise of the court's indisputable authority under the law." We agree, and conclude that Ford has not rebutted the presumption of impartiality of the trial court. See Herrmann , 364 Wis. 2d 336, ¶3. Therefore, his claim of judicial bias fails.
Ineffective Assistance of Counsel Claim
¶39 Lastly, we reach Ford's claim that his trial counsel was ineffective for failing to call his mother and sister to testify at trial, failing to pursue an interlocutory appeal after his motion to suppress was denied, and failing to object to the trial court's comments about the homicide during his sentencing. Thus, he contends that the postconviction court erred in not granting an evidentiary hearing.
¶40 "A motion claiming ineffective assistance of counsel does not automatically trigger" the right to an evidentiary hearing. State v. Phillips , 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157. No hearing is required "if the defendant fails to allege sufficient facts in his or her motion, if the defendant presents only conclusory allegations or subjective opinions, or if the record conclusively demonstrates that he or she is not entitled to relief." Id. In our review of a postconviction court's denial of an evidentiary hearing, we first review "whether the motion, on its face, alleges facts entitling [the defendant] to relief." Id. If the motion fails to allege sufficient facts, it is within the postconviction court's discretion to deny the motion without a hearing. Id.
¶41 In a claim of ineffective assistance of counsel, the defendant must demonstrate: "(1) that his counsel's performance was deficient; and (2) that the deficient performance was prejudicial." State v. Romero-Georgana , 2014 WI 83, ¶39, 360 Wis. 2d 522, 849 N.W.2d 668. "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Id. (citation and one set of quotation marks omitted). "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." State v. Smith , 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854. "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).
¶42 With regard to Ford's trial counsel's failure to call his mother or sister, the postconviction court found, in reviewing their affidavits for Ford's newly discovered evidence claim, that "in light of the totality of the evidence," the evidence they would have purportedly provided "would not have made a dent in the outcome of this case" due to the overwhelming evidence against Ford. Based on our review of the record, we agree. Therefore, Ford has not demonstrated that he was prejudiced by any error of counsel relating to his failure to call these witnesses at trial. See Love , 284 Wis. 2d 111, ¶30. Thus, his trial counsel was not ineffective in this respect. See Smith , 268 Wis. 2d 138, ¶15.
¶43 Furthermore, "[i]t is well-established that trial counsel could not have been ineffective for failing to make meritless arguments." State v. Allen , 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. As we have already discussed, Ford's arguments relating to the denial of his motion to suppress and the trial court's comments regarding the homicide charge at sentencing were both without merit. As a result, Ford's trial counsel was not ineffective for failing to raise these issues. See id.
¶44 Therefore, we conclude that the record conclusively demonstrates that Ford is not entitled to relief for his ineffective assistance of counsel claim. See Phillips , 322 Wis. 2d 576, ¶17. Thus, the trial and postconviction courts did not err in denying Ford an evidentiary hearing. See id.
¶45 Accordingly, we affirm Ford's judgment of conviction as well as the order denying his postconviction motion.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The trial was before the Honorable Ellen R. Brostrom.

In his motion to suppress, Ford also raised the argument that the x-rays taken at Froedtert Hospital prior to the removal of the plastic bag violated Wis. Stat. § 968.255(2)(c) (2017-18), which prohibits making a visual reproduction of a strip search. That portion of his motion was withdrawn after it was discovered that the x-rays were done after the warrant was obtained for the body cavity search. This issue was not raised again by Ford in either his postconviction motion or this appeal.
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The Honorable Jeffrey A. Wagner was initially assigned to hear Ford's postconviction motion, and that court granted the motion to withdraw of Ford's appointed postconviction counsel. However, when Ford filed his pro se motion asserting judicial bias at sentencing, it was assigned to Judge Brostrom since she had presided over Ford's sentencing hearing and therefore was "in the best position to respond to the allegations of bias."

Ewing was one of Ford's "runners" who was also arrested and charged in conjunction with the heroin trafficking investigation. Ewing was the father of Samantha Ford's child, and by the time she submitted her affidavit, he was deceased.

This supplemental postconviction motion was heard by Judge Wagner.