BRASH, J.
¶1 Robert Brian Spencer appeals from his judgment of conviction entered after a jury convicted him of possession with intent to deliver ten to fifty grams of heroin as a second or subsequent offense, and possession of a firearm by a felon. He also appeals from an order denying his motion for postconviction relief. In that motion, Spencer argued that (1) there was insufficient evidence to support the jury's verdict; (2) his trial counsel was ineffective for failing to call additional witnesses and investigate a potential challenge to the testimony of one of the police officers involved in the case; (3) his trial counsel was ineffective for failing to file a motion to suppress the evidence obtained after the execution of a search warrant; and (4) the State committed a Brady[1] violation in failing to turn over portions of the personnel record of a police officer who was previously disciplined in an unrelated case.
¶2 The trial court granted Spencer's request for a Machner[2] hearing regarding his ineffective assistance claim relating to counsel's failure to call additional witnesses, but denied the remainder of Spencer's motion. At the end of the Machner hearing, the court denied that ineffective assistance claim as well, finding that trial counsel was not deficient and that Spencer had not demonstrated that he was prejudiced because the outcome of the trial would likely not have been different. We affirm.
BACKGROUND
¶3 The charges against Spencer resulted from the execution of a no-knock search warrant at Spencer's residence on North 13th Street in Milwaukee on July 18, 2014. The warrant was issued to search for firearms and related accessories after a confidential informant told police that Spencer had tried to sell a gun to the informant.
¶4 For the execution of the no-knock warrant, the tactical unit set off a percussion grenade prior to entering the residence. Other officers were positioned outside the residence working "containment"-making sure no one fled. Officer Jason DeWitt, who was positioned outside the front of the house, observed "an African-American hand" reach over a six-foot fence which extended down the side of the residence, and throw a purple Crown Royal Canadian Whisky bag over the fence into the neighboring yard. Officer DeWitt estimated that this occurred five to ten seconds after the percussion grenade went off.
¶5 Officer Ryan McElroy was also positioned in the front of the residence and saw the hand throw the bag over the fence within "a few seconds" of the tactical unit entering the residence. Officer McElroy retrieved the bag from the neighboring yard. Inside were two sandwich bags which held fifty "corner cut" bags containing over forty grams of heroin. There were also two digital scales inside the bag.
¶6 Officer Christopher McBride was positioned at the rear of the residence. From his vantage point, Officer McBride observed Spencer in the area of the yard from where the bag had been thrown. He observed Spencer there about thirty seconds after the percussion grenade went off. The only other person he saw in the yard at that time was Beatrice Young, Spencer's daughter, who was holding an infant in her arms. Officer McBride also noted that when he had approached, there were three men working on vehicles on a parking slab off an alley at the rear of the residence.
¶7 During the search, police discovered additional Crown Royal bags, a blue rubber strap, balloons, aluminum foil, a box of sandwich baggies, and a box of ammunition in a storage shed on the property. Spencer admitted that those items were his. Police also recovered a semi-automatic handgun in the bedroom of the residence. Spencer admitted that the gun was his. Additionally, police found two more digital scales in the backyard of the residence, as well as more Crown Royal bags and two open boxes of sandwich bags in the basement.
¶8 Spencer was arrested and charged with possession with intent to deliver ten to fifty grams of heroin as a second or subsequent offense, and possession of a firearm by a felon. The case went to trial in October 2014. Testimony was heard from the police officers involved in the execution of the search warrant, including Officer DeWitt, Officer McElroy, and Officer McBride, who described their observations outside the residence when the Crown Royal bag was thrown over the fence.
¶9 For the defense, Spencer's live-in girlfriend, Tameka Rash, testified. She stated that Spencer was inside the house, in the bathroom, when officers entered the residence. She also testified that she told the police the gun that was recovered in the bedroom belonged to her. Additionally, when the heroin was recovered at the time of the search, Rash had made a statement to police that she had told Spencer to "stop messing with that stuff"; during her testimony, however, she denied making that statement.
¶10 Spencer also testified. He admitted to possessing the gun found in the bedroom, but denied that the Crown Royal bag with the heroin in it belonged to him and denied throwing it over the fence. He explained that he was in the bathroom when police entered the residence, and that he ran out into the backyard approximately two minutes after they entered. He stated the Crown Royal bag must have been thrown by one of the men who had been on the parking slab.
¶11 The jury convicted Spencer on both counts. He was sentenced to a twenty-year term, bifurcated as twelve years of initial confinement and eight years of extended supervision.
¶12 Spencer filed a postconviction motion in July 2016. He sought to have his judgment of conviction vacated and the evidence against him suppressed, arguing that his trial counsel was ineffective in failing to file a pretrial suppression motion challenging the search warrant, and asserting that there was insufficient evidence to support the drug conviction. Spencer further argued that the State's failure to inform trial counsel that Officer DeWitt had previously been suspended constituted a Brady violation.
¶13 Additionally, Spencer contended that his trial counsel was ineffective for failing to investigate the officers' view of the yard from where the Crown Royal bag was thrown, specifically with regard to a large tree hanging over the fence that may have obstructed their view. Spencer also asserted ineffective assistance of counsel for failing to call Young and the three men who were on the parking slab at the time of the search as witnesses, contending that they could have corroborated the testimony of Spencer and Rash regarding Spencer being in the bathroom at the time the police entered the residence.
¶14 The trial court partially denied Spencer's motion. The court rejected Spencer's ineffective assistance argument relating to failing to file a motion to suppress. It reasoned that even if the police lacked reasonable suspicion for a no-knock warrant, they executed the warrant in good faith after it was issued by a judge, and therefore suppression of the evidence was not a potential remedy. Accordingly, it concluded that trial counsel was not ineffective for failing to make a motion that would have been denied.
¶15 The trial court also rejected Spencer's contention that a Brady violation occurred with the State's failure to turn over Officer DeWitt's disciplinary file and that his counsel was ineffective for failing to pursue it. The court noted that Brady requires the State to provide to the defense "favorable" evidence which is material to the case; that is, evidence that may affect the outcome of a trial. See Brady v. Maryland , 373 U.S. 83, 87 (1963) ; State v. Harris , 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737. The trial court found that the charge against Officer DeWitt, which was "fail[ing] to be attentive and zealous in the discharge of his duties," did not have significant probative value in this case, and thus there was not a reasonable probability that its disclosure at trial would have led to a different outcome. Therefore, the court held that Spencer had not established a Brady violation nor ineffective assistance on the part of his trial counsel.
¶16 The trial court further denied Spencer's request for postconviction discovery of "all 'disciplinary actions against the officers that participated in the investigation' " of this case, finding that the request was based on his belief that Officer DeWitt's disciplinary record should have been disclosed prior to trial, and that asking for all records is "overly broad." The court also found that the testimony of all of the officers involved in the search was sufficient to support the verdict, and thus rejected Spencer's claim of insufficiency of the evidence.
¶17 However, the trial court scheduled a Machner hearing on Spencer's claim of ineffective assistance based on trial counsel's failure to call corroborating witnesses regarding his location when the police entered his residence. The court further stated that Spencer would be permitted to develop his ineffective assistance argument relating to counsel's failure to investigate the officers' view of the fence and yard, although it noted that it had reviewed photographic evidence submitted at trial in conjunction with additional photos submitted with the postconviction motion and was not persuaded at that point that there was a reasonable probability of a different trial outcome.
¶18 The Machner hearing was held over several dates in February, March, and June 2017, with a ruling given by the trial court in July 2017. The court noted that trial counsel had attempted to contact additional witnesses and investigate the scene with regard to the officers' view when the Crown Royal bag was thrown over the fence. Furthermore, the court stated that even if trial counsel could be deemed to have been deficient in this respect, Spencer had not demonstrated that he was prejudiced by that deficiency because he had not shown that the outcome of the trial would have been different. The testimony of the additional witnesses "was not necessarily consistent with each other, in terms of where exactly Mr. Spencer was," and the jury still would have heard and considered the testimony of Officer McBride, who saw Spencer in the yard shortly after the police entered the residence. Therefore, the court held that trial counsel was not deficient and there was no prejudice to Spencer. This appeal follows.
DISCUSSION
A. Sufficiency of the Evidence
¶19 Spencer first argues that the evidence was not sufficient to support the guilty verdict for possession of heroin with the intent to distribute.[3] In our review of a claim of insufficient evidence, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).
¶20 Our review of the trier of fact's findings is "highly deferential." State v. Rowan , 2012 WI 60, ¶5, 341 Wis. 2d 281, 814 N.W.2d 854. Indeed, if there is any possibility that the fact-finder "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." Poellinger , 153 Wis. 2d at 507. Whether the evidence in a case is sufficient to sustain a guilty verdict is a question of law that we review de novo. State v. Smith , 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.
¶21 Spencer argues that the only evidence that was presented on this issue was the officers' observation of a hand throwing the Crown Royal bag over the fence and Officer McBride's testimony that Spencer was the only one in the backyard at that time who could have thrown the bag. However, that is not entirely accurate. There was also testimony relating to additional evidence that was found at the residence during the search-digital scales, boxes of sandwich bags, and more Crown Royal bags-all of which is indicative of drug dealing. While this evidence is circumstantial in nature, a guilty verdict "may rest entirely on circumstantial evidence." See State v. Searcy , 2006 WI App 8, ¶22, 288 Wis. 2d 804, 709 N.W.2d 497. Therefore, we conclude that the jury drew a reasonable inference from the evidence in finding Spencer guilty of possession of heroin with the intent to deliver.
¶22 Furthermore, the defense presented testimony from both Spencer and Rash regarding Spencer's location when the search commenced: that he was in the bathroom as opposed to in the backyard, inferring that he could not have thrown the Crown Royal bag over the fence. The jury, however, apparently found the officers' testimony more credible than that of Spencer and Rash, which is within its province. Whitaker v. State , 83 Wis. 2d 368, 377, 265 N.W.2d 575 (1978) ("The credibility of the witnesses and the weight of the evidence is for the trier of fact."). Therefore, we conclude that the evidence is sufficient to support the guilty verdict of possession of heroin with the intent to distribute.
B. Ineffective Assistance of Counsel
¶23 Spencer next argues that his trial counsel was ineffective for various reasons. In a claim of ineffective assistance of counsel, the defendant must demonstrate: "(1) that his counsel's performance was deficient; and (2) that the deficient performance was prejudicial." State v. Romero-Georgana , 2014 WI 83, ¶39, 360 Wis. 2d 522, 849 N.W.2d 668. "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Id. (citation and one set of quotation marks omitted). "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." State v. Smith , 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854. "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).
I. Failure to Call Additional Witnesses
¶24 The first argument Spencer raises is that his trial counsel was ineffective for failing to call certain witnesses and fully investigate circumstances surrounding the search. Specifically, Spencer asserts that trial counsel should have done more to locate the three men who were on the parking slab at the time of the search to call them as witnesses at the trial. He also argues that Young could have been called to corroborate his testimony and that of Rash regarding his location in the residence at the time the Crown Royal bag was thrown over the fence.
¶25 These issues were explored at the Machner hearing. Trial counsel testified that he made attempts to contact the men who were on the parking slab at the time of the search-he called and texted them, and also went to their homes to try to make contact, leaving a business card with a request for them to call-but they were unresponsive. Furthermore, as trial counsel pointed out in closing arguments, had those witnesses been called it was very unlikely that their testimony would have supported the defense's theory that one of them had thrown the bag.
¶26 In fact, Spencer was able to produce only one of the three men-Albert Medley-to testify at his Machner hearing. Medley's testimony at that hearing was that he did not remember whether Spencer was in the yard at the time the percussion bomb went off.[4] Medley had previously made a contradictory statement to an investigator from the Public Defender's Office in December 2015, in which he stated that Spencer was in the house at the time the percussion grenade went off. However, that was an unsworn statement having little probative value.
¶27 Thus, Spencer has failed to prove that calling these witnesses would have altered the outcome of the trial. Indeed, he was able to elicit testimony from only one of the witnesses, and that testimony did not help his case. Therefore, he has not demonstrated that he was prejudiced by this alleged error of trial counsel. See Love , 284 Wis. 2d 111, ¶30.
¶28 With regard to calling Young as a witness, trial counsel testified that he had noted inconsistent statements she had made to police regarding who was in the backyard when the bag was thrown. He was also concerned that her testimony would place the other witnesses on the parking slab and therefore contradict his defense theory that one of them had thrown the bag.
¶29 "Counsel's decisions in choosing a trial strategy are to be given great deference." State v. Balliette , 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334. Even presuming that Young would have testified that Spencer was inside the residence at the time the percussion grenade went off, the jury had already heard testimony in this regard from both Spencer and Rash, his girlfriend; hearing it again from Young, Spencer's daughter, would not have significantly bolstered the defense's theory. Therefore, Spencer has not demonstrated that Young's testimony would have altered the outcome of the trial, and thus has not demonstrated that he was prejudiced by this alleged error of trial counsel. See Love , 284 Wis. 2d 111, ¶30.
II. Failure to Challenge Officer DeWitt's Testimony Regarding his View of the Scene
¶30 Spencer also asserts that his trial counsel should have used photographic evidence to impeach Officer DeWitt's testimony regarding his view of the hand that threw the Crown Royal bag over the fence. The photos show a large tree hanging over the fence, which Spencer contends would have obstructed Officer DeWitt's view.
¶31 This argument is not persuasive. Spencer does not challenge the testimony of Officer McElroy, who stated that he also saw the hand throw the bag over the fence. Spencer fails to demonstrate how the alleged error of trial counsel in cross-examining Officer DeWitt had any impact on the outcome of the trial given Officer McElroy's testimony. Therefore, he has not proven the prejudice prong of the ineffective assistance test. See id.
¶32 Also with regard to this issue, Appellant's brief cites to the written decision of the trial court issued prior to the Machner hearing. In the brief, appellate counsel states that the trial court determined that the photos demonstrated that the officers could not have seen the bag being thrown. That is the opposite of what the trial court actually found; specifically, the court stated that after reviewing the photos in conjunction with additional photos submitted by Spencer with his postconviction motion, it was "not persuaded that these photographs demonstrate that officers could not have seen a hand throwing a bright purple bag over the six foot fence" (emphasis added). In other words, the court indicated that with the evidence before it at that point, Spencer's argument would fail.[5]
¶33 At the Machner hearing, trial counsel testified that he remembered that during his cross-examination of Officer DeWitt at trial, he showed the officer a picture of Spencer's yard which showed a "rather large tree hanging over the fence." However, counsel testified that he did not think the tree was "relevant" to Officer DeWitt's view of the fence where the bag was thrown. Spencer does not counter this testimony on appeal; he merely argues that it was "unreasonable" that counsel did not attempt to impeach Officer DeWitt. We disagree and, given our deferential view of trial strategy, conclude that this did not constitute deficient performance on the part of trial counsel. See Balliette , 336 Wis. 2d 358, ¶26. Therefore, Spencer has failed to establish that counsel was ineffective with regard to challenging Officer DeWitt's testimony. See Romero-Georgana , 360 Wis. 2d 522, ¶39.
III. Failure to File a Motion to Suppress
¶34 Spencer next argues that his trial counsel was ineffective for failing to file a pretrial motion to suppress the evidence discovered during the execution of the search warrant. Additionally, he contends that the trial court erred in rejecting his request for a postconviction suppression motion.
¶35 In our review of the issuance of a search warrant, "we give great deference to the warrant-issuing commissioner." State v. Meyer , 216 Wis. 2d 729, 742, 576 N.W.2d 260 (1998). The decision to issue a warrant "will be upheld unless the facts before the commissioner at the time the warrant was issued were 'clearly insufficient to support a finding of probable cause.' " Id. (citation and one set of quotation marks omitted).
¶36 Spencer specifically challenges the "no[-]knock" aspect of the warrant, arguing that it lacked reasonable suspicion. A no-knock warrant may be issued in circumstances where the police " 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile[.]' " State v. Eason , 2001 WI 98, ¶18, 245 Wis. 2d 206, 629 N.W.2d 625 (citation omitted). The State bears the burden of establishing reasonable suspicion, and must show "particular facts" which support such a finding. Id. , ¶20. "The information necessary to establish reasonable suspicion can be less in both content and reliability than the information needed to establish probable cause." Id. , ¶19. "In other words, the required showing of reasonable suspicion is low, and depends upon the facts and circumstances of each case." Id. The State cannot rely solely on police officers' experience and training to establish reasonable suspicion, but those factors may be considered in conjunction with facts particular to the case. Id. , ¶20.
¶37 In this case, the search warrant was issued based on information from a confidential informant that Spencer had a firearm. The informant had seen Spencer with the firearm within five days of the warrant being requested. A no-knock manner of execution was requested due to the high probability that Spencer was armed. We conclude that this establishes the requisite reasonable suspicion for issuing the no-knock warrant.
¶38 The trial court held that even if reasonable suspicion was lacking here, the police executed the warrant in good faith based on the issuing judge's determination. In Wisconsin, there is a good faith exception to the exclusionary rule when police officers "act in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate," such that suppression of evidence is not required. Id. , ¶27. This exception does not apply in cases where the officers knew or should have known that information in the warrant affidavit was false, where the warrant was so lacking in probable cause that its execution was unreasonable, or where the issuing magistrate "wholly abandoned his [or her] judicial role[.]" United States v. Leon , 468 U.S. 897, 923 (1984).
¶39 None of those factors apply in this case; therefore, we agree with the trial court that even if Spencer's trial counsel had brought a pretrial motion to suppress, it would have been denied. Additionally, Spencer's request for a postconviction suppression motion also necessarily fails, because he has not alleged facts that would entitle him to relief. See State v. Phillips , 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157. The trial court has the discretion to deny a motion without an evidentiary hearing if the defendant has not alleged facts that would warrant relief, and that discretionary decision will be overturned only if the trial court erroneously exercised its discretion. Id. That is certainly not the case here, since we conclude that Spencer's request for a suppression hearing would have been denied.
¶40 Trial counsel will not be found to have been ineffective for failing to make a meritless argument. State v. Allen , 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. As we have concluded that a motion to suppress would have been denied, Spencer's ineffective assistance argument on this issue fails. See id.
C. Brady Violation
¶41 Finally, Spencer argues that the State's failure to disclose that Officer DeWitt had previously been disciplined in an unrelated matter was a Brady violation. Under the Brady rule, the State is obligated to disclose evidence that is "favorable to an accused," which includes both exculpatory and impeachment evidence. Harris , 272 Wis. 2d 80, ¶12. To establish a Brady violation, a defendant "must, in addition to demonstrating that the withheld evidence is favorable to him, prove that the withheld evidence is 'material.' " Id. , ¶13 (citation omitted). Evidence is material " 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Harris , 272 Wis. 2d 80, ¶14 (citation and one set of internal quotation marks omitted).
¶42 The disciplinary action against Officer DeWitt occurred in 2009. The charge against Officer DeWitt was "[f]ailure to be attentive and zealous in the discharge of his duties," stemming from his denial that he had observed an incident in November 2008 between another officer and a suspect. Spencer argues that the mere fact that Office DeWitt was disciplined diminishes his credibility.
¶43 However, failure to disclose evidence constitutes a Brady violation only if there is a reasonable probability that it would have affected the outcome of the trial. See Harris , 272 Wis. 2d 80, ¶14. In this case, Officer DeWitt's testimony regarding his observation of a hand throwing the Crown Royal bag over the fence was corroborated by Officer McElroy. Spencer fails to explain how impeaching Officer DeWitt with his disciplinary record would have affected the outcome of the trial when Officer McElroy testified to the same observation as Officer DeWitt. Therefore, we conclude that there was no Brady violation. See Harris , 272 Wis. 2d 80, ¶14.
¶44 Accordingly, we affirm Spencer's judgment of conviction and the trial court's denial of his postconviction motion.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

See Brady v. Maryland , 373 U.S. 83 (1963).

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Spencer does not challenge the sufficiency of the evidence for the guilty verdict on the charge of possession of a firearm by a felon.

It appears from the record that the parking slab where the witnesses were observed by police was sometimes referred to as the backyard. However, Medley clearly stated in his testimony that he was "in the alley" when the percussion grenade went off, and not in the backyard in the vicinity of the fence. Appellant's brief states that "Mr. Medley placed himself inside the backyard just before the flash bomb went off"; this is not an accurate representation of Medley's testimony. We caution appellate counsel to ensure that the facts set forth in her briefs are an accurate reflection of the record.

We again caution appellate counsel on her representation of facts in the record.