STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrea J. OGDEN a/k/a Andrea J. (Ogden) Parins,
Defendant-Appellant-Petitioner,

Supreme Court

*No. 94–1485–CR. Oral argument February 2, 1996.—Decided
March 14, 1996.*

(Also reported in 544 N.W.2d 574.)

For the defendant-appellant-petitioner there were briefs by *Thomas M. Olson*, and *The Law Center*, La Crosse and oral argument by *Thomas M. Olson*.

For the plaintiff-respondent the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

DONALD W. STEINMETZ, J. Did the trial court commit an error of law when, instead of exercising discretion based upon individual factors, it applied a uniform sentencing policy of refusing "Huber" release to child care providers except when "absolutely essential?" We hold it did.

Andrea J. Ogden, a/k/a Andrea J. Parins, was arrested and charged with two counts of resisting or obstructing an officer in violation of Wis. Stat. § 946.41(1) (1993-94). She entered a guilty plea to both of these counts. The La Crosse County Circuit Court, the Honorable John J. Perlich, withheld sentence and ordered probation to run concurrently for two years on each count. As conditions of the probation, the court required Ogden to make a personal apology, perform 50 hours of community service, reimburse the public defender's office for attorney's fees, pay restitution, and serve 30 days in the county jail.

Ogden moved the trial court to delay the commencement of her jail term until the father, who is now also Ogden's husband, could finish school and be available to help care for the child. The court granted an extension of time to report to jail and allowed Ogden Huber privileges "for work, but not for child care."

Shortly thereafter, Ogden filed another postconviction motion requesting the trial court to reconsider its refusal to permit her Huber release for child care. Judge Perlich denied her motion and stated that he never granted Huber privileges for child care unless it was "absolutely necessary." Ogden appealed and the court of appeals, in an unpublished opinion, affirmed the trial court's judgment. This court accepted Ogden's petition for review on the question of whether the trial court abused its discretion in not allowing Ogden Huber privileges for child care.

Trial courts have tremendous discretion in determining the conditions of probation. *See* Wis. Stat. § 973.09(1)(a) (1993-94).[1] Central to Ogden's appeal is the trial court's refusal to grant her Huber privileges pursuant to Wis. Stat. § 973.09(4)[2] during her jail term

---

[1] Wis. Stat. § 973.09(1)(a) (1993-94) provides as follows:

**973.09 Probation. (1)** (a) Except as provided in par. (c) or if probation is prohibited for a particular offense by statute, if a person is convicted of a crime, the court, by order, may withhold sentence or impose sentence under s. 973.15 and stay its execution, and in either case place the person on probation to the department for a stated period, stating in the order the reasons therefor. The court may impose any conditions which appear to be reasonable and appropriate. The period of probation may be made consecutive to a sentence on a different charge, whether imposed at the same time or previously. If the court imposes an increased term of probation, as authorized under sub. (2) (a) 2. or (b) 2., it shall place its reasons for doing so on the record.

All future references to Wisconsin Statutes will be to the 1993-94 version.

[2] Wis. Stat. § 973.09(4) provides as follows:

(4) The court may also require as a condition of probation that the probationer be confined during such period of the term of probation as the court prescribes, but not to exceed one year. The court may grant the privilege of leaving the county jail, Huber

as a condition of her probation. Wisconsin Statute § 303.08(1)[3] sets forth a number of instances where Huber release may be allowed by the trial court. Family care is one of these. Wis. Stat. § 303.08(1)(c).

facility or tribal jail during the hours or periods of employment or other activity under s. 303.08 (1) (a) to (e) while confined under this subsection. The court may specify the necessary and reasonable hours or periods during which the probationer may leave the jail, Huber facility or tribal jail or the court may delegate that authority to the sheriff. In those counties without a Huber facility under s. 303.09 or an agreement under s. 302.445, the probationer shall be confined in the county jail. In those counties with a Huber facility under s. 303.09, the sheriff shall determine whether confinement under this subsection is to be in that facility or in the county jail. The sheriff may transfer persons confined under this subsection between a Huber facility and the county jail. In those counties with an agreement under s. 302.445, the sheriff shall determine whether confinement under this subsection is to be in the tribal jail or the county jail, unless otherwise provided under the agreement. In those counties, the sheriff may transfer persons confined under this subsection between a tribal jail and a county jail, unless otherwise provided under the agreement. While subject to this subsection, the probationer is subject to s. 303.08 (1), (3) to (6), (8) to (12) and (14), all the rules of the county jail, Huber facility or tribal jail and the discipline of the sheriff.

[3] Wis. Stat. § 303.08(1) provides as follows:

**303.08 "Huber Law"; employment of county jail prisoners. (1)** Any person sentenced to a county jail for crime, nonpayment of a fine or forfeiture, or contempt of court, may be granted the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes:

(a) Seeking employment or engaging in employment training;

(b) Working at employment;

(bn) Performing community service work under s. 973.03;

(c) Conducting any self-employed occupation including housekeeping and attending the needs of the person's family;

(d) Attendance at an educational institution; or

(e) Medical treatment.

Ogden's appeal, therefore, essentially requires this court to review the sentencing decision of the trial court. It is axiomatic that an appellate court will not usually interfere with a trial court's discretion in this area. *See Elias v. State*, 93 Wis. 2d 278, 282, 286 N.W.2d 559 (1980). In fact, this court has noted that a reviewing court should "start with the presumption that the trial court acted reasonably, and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Id.* (citations omitted).

It is equally axiomatic, though, that one "unreasonable and unjustifiable basis" for a sentence is a trial judge's employment of a preconceived policy of sentencing that is "closed to individual mitigating factors." *State v. Martin*, 100 Wis. 2d 326, 327, 302 N.W.2d 58 (Ct. App. 1981); *see also State v. J.E.B.*, 161 Wis. 2d 655, 674, 469 N.W.2d 192 (Ct. App. 1991), *cert. denied*, 112 S. Ct. 1484 (1992). Such inflexibility, which "bespeaks a made-up mind," is unacceptable. *State v. Halbert*, 147 Wis. 2d 123, 128, 432 N.W.2d 633 (Ct. App. 1988); *see also United States v. Foss*, 501 F. 2d 522, 527 (1st Cir. 1974). This court has repeatedly held that the imposition of a criminal sentence must at the very least be based on "the gravity of the offense, the character of the offender and the need for the protection of the public." *Anderson v. State*, 76 Wis. 2d 361, 364, 251 N.W.2d 768 (1977); *see also Harris v. State*, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977); *Rosado v. State*, 70 Wis. 2d 280, 291, 234 N.W.2d 69 (1975); *McCleary v. State*, 49 Wis. 2d 263, 274-276, 182 N.W.2d 512 (1971). This methodology does not allow for a sentence which fits the crime, but not the criminal. *See McCleary*, 49 Wis. 2d at 271.

The trial court in this case employed the very type of mechanistic sentencing approach disfavored by our case law. At one point the court stated, "[t]here are certain procedures and policies that have to be established as to allow some uniformity. If I make an exception for her, then any person in the jail can also request that same exception." Further, it impliedly disregarded the particular facts of Ogden's situation by asserting: "My reason has always been I do not allow [Huber privileges for] normal child care because, number one, it's all too often abused. Somebody becomes real interested in a child only after they have been sentenced to jail and use it only as a means of getting out of jail. . . ." In fact, the judge made it clear that he would only grant Huber privileges for child care if it was absolutely essential.

The record indicates that the trial court had decided not to grant Huber release for family care *before* Ogden made her request. Based upon this preconceived sentencing policy, it summarily denied her motion. The trial court clearly did not take into account the specific circumstances of Ogden's situation. This type of approach does not constitute an exercise of discretion, but is instead an abdication of the trial court's responsibility to look at the facts in each case independently before issuing a sentence.

Furthermore, in addition to being violative of the criminal jurisprudence of this state, the trial court's predetermined conclusion regarding Huber release is not supported by the language of the statute. As indicated earlier, Wis. Stat. § 303.08(1) allows Huber release for a number of purposes including employment and/or family care. It does not expressly or impliedly state that securing Huber release for family

care should be any more or less difficult than securing release for employment purposes. A judge's decision whether to grant Huber privileges should not be predetermined by which subsection of the statute happens to be applicable to the offender in question. Instead, a court should look at the individual circumstances of the case before it and then base its determination of whether Huber release is appropriate on those circumstances.

■

This decision does not limit a trial court's sentencing discretion. It simply applies principles which have been embodied in this state's criminal law for decades. *See, e.g., McCleary*, 49 Wis. 2d. at 274-276. We do not hold that a trial judge is prohibited from entertaining general predispositions, based upon his or her criminal sentencing experience, regarding when a certain type of sentence is appropriate. We do hold, however, that a judge's predispositions must never be so specific or rigid so as to ignore the particular circumstances of the individual offender upon whom he or she is passing judgment.

■

Ogden asserts that her situation, where the father would have had to quit his job in order to provide child care, is the type in which the court should have allowed Huber release. However, the trial court made no definite findings of fact regarding whether there were friends or family who could care for the child during Ogden's prison term or if there was some other possible alternative to the father quitting his job.[4] Based upon

---

[4] The trial court never specifically asked Ogden or her attorney whether there were relatives or friends who could care for the child. Nor did the court explore any possible child care alternatives. At one point Ogden's attorney did assert: "[T]he

the record, this court has no opinion whether Huber release should be allowed. We do note, however, that if Ogden's situation does require her husband to quit his job—a job which provides the only financial support for the family—in order to care for their young child, it would seem unreasonable for a court to allow her Huber release to seek employment, yet not allow her Huber privileges for child care.

The decision of the court of appeals is reversed and the cause is remanded to the trial court to determine, consistent with this opinion, whether Ogden should be granted Huber privileges for child care.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the trial court.

father would be working basically at a minimum wage job during the day. There would not be money available to provide day care outside the home and there is no one else besides the mother to take care of the child." This statement, however, was not in response to any specific questioning by the judge, and neither the judge nor Ogden's attorney expounded on Ogden's inability to obtain help in caring for her child.