COURT OF APPEALS
DECISION
DATED AND FILED

August 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2018AP1476-CR**

Cir. Ct. No.  2016CF1316

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

OCTAVIA W. DODSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  M. JOSEPH DONALD and CAROLINA STARK, Judges. *Affirmed*.

Before Brash, P.J., Blanchard and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Octavia W. Dodson appeals from a judgment of conviction, entered upon his guilty plea, for one count of second-degree intentional homicide.   *See* WIS. STAT. § 940.05(1) (2015-16).[1]   Dodson also appeals from an order denying his postconviction motion.   Dodson seeks resentencing on grounds that the trial court relied on an improper factor at sentencing:  Dodson's legal gun ownership.  Upon review, we affirm.

## BACKGROUND

¶2      Dodson was charged with one count of second-degree intentional homicide, by use of a dangerous weapon, in connection with the death of Deshun T. Freeman.   *See* WIS. STAT. § 940.05(1) (2015-16).   The complaint indicated that the mitigating factor that resulted in a charge of second-degree intentional homicide, rather than first-degree intentional homicide, was "[u]nnecessary defensive force."  *See* WIS. STAT. § 940.01(2)(b) (2015-16).[2]

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  WISCONSIN STAT. § 940.01(2) (2015-16), which has not been amended in the 2017-18 version of the statutes, provided in relevant part:

> MITIGATING CIRCUMSTANCES.   The following are affirmative defenses to prosecution under this section which mitigate the offense to 2nd-degree intentional homicide under s. 940.05:
>
> ….
>
> **(b)** *Unnecessary defensive force*.   Death was caused because the actor believed he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

2

¶3      According to the criminal complaint, Dodson told the police that his vehicle was rear-ended by a man driving a Buick.  Dodson said that he got out of his vehicle to check for damage and observed the other vehicle drive backwards. Dodson, who had a valid concealed carry permit, removed his semi-automatic pistol from his holster and held it in his hand.  The other vehicle then drove forward, around Dodson's vehicle, and left the scene.

¶4      Dodson told the police that he got back into his vehicle and drove in the direction of the Buick "to try to get a plate number."  While Dodson was driving, he removed a ten-round magazine from his pistol and "replaced it with the extended 17-round magazine."

¶5      Dodson said that as he was driving, a Buick that Dodson believed was the same Buick which he had been following "came up from behind at a high rate of speed."[3]  Both vehicles stopped and parked on the side of the street.  The complaint continues:

> Dodson states that a male subject exited the car in front of him and ran toward Dodson.  Dodson stated that he could not see this subject's hands because they were either in his jacket pockets or underneath his shirt.  Dodson states that he thought that this subject was pulling something out. Dodson states that this male subject yelled: "Fuck nigga!" or words to that effect.
>
> Dodson initially stated that he discharged his firearm at the male subject from his automobile, and that he never at any point got out of his car.  Dodson later confessed that he exited [his vehicle] and shot the victim from a standing position outside of his car.

---

[3] While Dodson believes that the vehicle Freeman drove was the same vehicle that was involved in the accident, the record indicates that the police were not able to confirm that.  The State suggested at sentencing that Freeman may not have been involved in the first accident.

> Dodson stated that he believes he shot his gun three times. Dodson stated: "I felt that threat wasn't fair. There was no need."[5]

> Dodson states that after he shot, he observed the victim fall to the ground. Dodson states that he then got back into his car and drove to his girlfriend's house. Dodson states that he spoke with his girlfriend, and from there drove to his father's house. On the way to his father's house, Dodson states that he called 911 to report the shooting.

(Dodson's name substituted for "the defendant.") According to the criminal complaint, about four minutes elapsed between the time of the car accident and the shooting.[4]

¶6 Dodson entered into a plea agreement with the State. In exchange for Dodson's guilty plea, the State agreed to dismiss the dangerous weapon penalty enhancer, which lowered Dodson's potential exposure by five years, to forty years of initial confinement and twenty years of extended supervision. The State further agreed to recommend "substantial prison time," with the terms of initial confinement and extended supervision left to the trial court's discretion. The trial court conducted a plea colloquy with Dodson, during which Dodson personally agreed that the facts in the criminal complaint were "true and correct." The trial court thereafter dismissed the penalty enhancer, accepted Dodson's guilty plea, and found him guilty.[5]

---

[4] Specifically, the criminal complaint states that a security camera at a gas station indicated that the car accident occurred at 10:44 p.m. At 10:48 p.m., law enforcement's ShotSpotter gunshot detection system detected six gunshots near the intersection where Dodson shot Freeman. The criminal complaint further indicates that when the police recovered the extended magazine from Dodson, there were eleven unspent cartridges, which is consistent with six shots being fired.

[5] The Honorable M. Joseph Donald accepted Dodson's guilty plea and sentenced him.

4

¶7    At the sentencing hearing, the trial court heard arguments from both parties and from representatives for Dodson and the victim. Dodson personally addressed the trial court, expressing remorse for the victim's death. The trial court sentenced Dodson to fourteen years of initial confinement and six years of extended supervision.

¶8    Represented by postconviction counsel, Dodson filed a postconviction motion seeking to withdraw his guilty plea based on ineffective assistance of trial counsel with respect to the guilty plea. In the alternative, he sought resentencing on grounds that the trial court considered an improper factor at sentencing—Dodson's legal gun ownership. After conducting a *Machner*[6] hearing, the trial court denied the postconviction motion.[7] This appeal follows.

## DISCUSSION

¶9    On appeal, Dodson has chosen to pursue only his request for resentencing. He argues resentencing is warranted because the trial court "relied on an improper factor, in this case, [Dodson's] decisions to obtain a concealed carry permit and to purchase a firearm."

¶10    The parties agree that our analysis is guided by *State v. Alexander*, 2015 WI 6, 360 Wis. 2d 292, 858 N.W.2d 662. *Alexander* recognized that appellate courts will not disturb a criminal sentence "so long as the [trial] court does not erroneously exercise its discretion." *See id.*, ¶16. *Alexander* continued:

---

[6] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] The Honorable Carolina Stark presided over the *Machner* hearing and denied Dodson's postconviction motion.

5

"A [trial] court erroneously exercises its sentencing discretion when it 'actually relies on clearly irrelevant or improper factors.'" *Id.*, ¶17 (citation omitted). The burden is on the defendant to prove, "by clear and convincing evidence, that the sentencing court actually relied on irrelevant or improper factors." *Id.*

¶11   *Alexander* discussed the "two-step framework" used in cases involving a trial court's reliance on inaccurate information. *See id.*, ¶18. Under that two-part analysis, "a defendant must prove that: (1) information was inaccurate, and (2) the court actually relied on the inaccurate information in the sentencing." *Id.* (citing *State v. Tiepelman*, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1). "If the defendant proves inaccuracy and actual reliance, the burden shifts to the State to prove the error was harmless." *See Alexander*, 360 Wis. 2d 292, ¶18 (citing *Tiepelman*, 291 Wis. 2d 179, ¶¶26-27).

¶12   *Alexander* held that *Tiepelman*'s two-step test for analyzing alleged inaccurate information can also be applied to cases alleging reliance on improper factors. *See Alexander*, 360 Wis. 2d 292, ¶18. *Alexander* further recognized precedent holding that "[w]hen the question relates to other improper factors like race and gender, only the second part of the test, actual reliance, is relevant." *Id.*, ¶21 (quoting *State v. Harris*, 2010 WI 79, ¶33 n.10, 326 Wis. 2d 685, 786 N.W.2d 409). Actual reliance on an improper factor occurs only when the trial court "gave explicit attention to an improper factor" and "the improper factor formed part of the basis for the sentence." *See Alexander*, 360 Wis. 2d 292, ¶25 (citations and internal quotation marks omitted). On appeal, "[o]ur obligation is to review the sentencing transcript as a whole, and to review potentially inappropriate comments in context." *See Harris*, 326 Wis. 2d 685, ¶45.

6

¶13    With those legal standards in mind, we turn to Dodson's argument that the trial court actually relied on an improper factor.  For purposes of this decision, we will accept, without deciding, Dodson's assertion that it would be improper to punish a defendant for legally exercising his or her right to bear arms under the United States and Wisconsin Constitutions.  The issue is whether the trial court did so here.

¶14    In its sentencing remarks, the trial court stated:

> In reviewing this case, I have to say I am completely baffled as to why this happened.  And I don't think that there is any rational way of trying to explain it.  I can tell you this, Mr. Dodson, that in my experience as a judge, I have seen over time how individuals when they are possessing a firearm, how that in some way changes them.  It changes how they view the world.  It changes how they react and respond to people.  I know that this is only speculation on my part, but I do strongly feel that the day that you applied for that concealed carry permit and went out and purchased that firearm, and that extended magazine, [whatever] your rational beliefs for possessing it, whether you felt the need to somehow arm yourself and protect yourself from essentially the crime that is going on in this community I think on that day set in motion this circumstance.
>
> It is clear to me, Mr. Dodson, that for whatever reason, and it appears that it is a distorted, misguided belief of the world that somehow Mr. Freeman was a threat that required you, in essence, to terminate his life.  Makes no sense.

Later, after recognizing that Dodson had previously been "a model citizen" with a job and no criminal history, the trial court said, "[I]t is clear to me that you were operating under some misguided belief, some distorted view of the world that somehow Desh[u]n Freeman was a threat to you when in reality it was nothing further from the truth."

¶15    Dodson argues that the trial court's statements indicate that it believed that Dodson "was a threat to society and had a 'distorted view of the world' because he was a lawful gun owner." Dodson explains: "The [trial] court blamed Mr. Dodson not merely for the homicide, but for what the court viewed as putting himself on a path toward violence by lawfully obtaining a gun and a license to carry it. This assumption violated Mr. Dodson's Second Amendment right to possess the firearm." Dodson further asserts that the trial court made assumptions about gun owners and "attribute[d] the negative views it has about gun owners to" Dodson.

¶16    We are not persuaded that the trial court's comments suggested that the trial court was punishing Dodson for exercising his Second Amendment rights. Here, the trial court's comments indicate that it, like the parties, was trying to make sense of what appeared to be a senseless homicide committed by someone without a criminal history. The trial court noted that in its experience as a judge, people can change as a result of owning guns. Such an observation was not improper. *See* ***State v. Ogden***, 199 Wis. 2d 566, 573, 544 N.W.2d 574 (1996) (holding that trial court is not "prohibited from entertaining general predispositions, based upon his or her criminal sentencing experience, regarding when a certain type of sentence is appropriate" as long as those predispositions are not "so specific or rigid so as to ignore the particular circumstances of the individual offender upon whom he or she is passing judgment").

¶17    Further, when the trial court commented on Dodson's "distorted, misguided belief of the world" that the victim presented a threat that required a lethal response, the trial court was addressing a relevant issue: Dodson's use of "[u]nnecessary defensive force." *See* WIS. STAT. § 940.01(2)(b). We agree with the State's analysis:

8

> The court's comments about Dodson's "distorted, misguided belief" and "distorted view" focused on Dodson's perception that Freeman posed a threat to him. Neither statement had anything to do with the court's previous observations as a judge about gun ownership or Dodson's status as a conceal-carry licensee. Indeed, the court's comments went to the very nature of the second-degree intentional homicide charge: Dodson acted with unnecessary defensive force when he intentionally killed Freeman. That is, Dodson believed Freeman posed an imminent danger of death or great bodily harm to him and that deadly force was necessary to defend himself, but his beliefs were not objectively reasonable. [Section] 940.01(2)(b); *see also **State v. Head***, 2002 WI 99, ¶69, 255 Wis. 2d 194, 648 N.W.2d 413 (discussing imperfect self-defense).

(Bolding added.)

¶18 We conclude that Dodson has not shown, by clear and convincing evidence, that the trial court actually relied on an improper factor. When viewed in context, *see **Harris***, 326 Wis. 2d 685, ¶45, the trial court's comments about Dodson's unlawful use of his firearm were not improper. The trial court never stated, explicitly or implicitly, that it was basing its sentence on the fact that Dodson chose to exercise his right, as the holder of a concealed carry permit, to carry a concealed weapon. Therefore, Dodson is not entitled to resentencing. We affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.