COURT OF APPEALS
DECISION
DATED AND FILED

November 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1897-CR**

Cir. Ct. No. **2018CF66**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SCOTT LEE REED,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Scott Reed appeals from a judgment convicting him of conspiracy to commit first-degree intentional homicide and from orders

denying him postconviction relief. Reed argues that he should be allowed to withdraw his no-contest plea due to the constitutionally ineffective assistance of his trial counsel. Reed also contends that the circuit court erroneously rejected some of his ineffective assistance of counsel claims prior to the *Machner*[1] hearing. In the alternative, Reed argues that he must be resentenced due to the court relying on inaccurate or improper information at sentencing, or he should have his sentence modified based on a new factor. We reject Reed's arguments and affirm.

## BACKGROUND

¶2    In late 2017, Reed was living with two friends, Troy Evert and Rachel Kirschner, who were dating one another. At the time, Reed considered Kirschner to be his "best friend," and he would refer to her as his "sister," even though they had no familial relationship. One evening, in October 2017, Kirschner became intoxicated and told a recent ex-boyfriend, Joey,[2] that she and her boyfriend Evert had set fire to a person's cabin after that person called Kirschner a "whore." Upon learning about the fire, Joey insisted that Kirschner breakup with Evert and threatened to tell law enforcement about the fire. As time passed, Joey became "more aggressive" with his demands, and Kirschner grew frustrated. At one point, Kirschner threatened to kill herself.

¶3    After Joey learned about the fire, Kirschner and Evert openly discussed how "somebody needs to take care of [Joey]," which Reed heard and

---

[1] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we use a pseudonym instead of the victim's name. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

understood meant "to kill" Joey. Reed eventually became involved in a plan to do exactly that. In mid-December 2017, Evert—with Reed present and while using Reed's cellphone—contacted a man in Illinois to "take care of [Joey]" and offered to pay him $100. Evert and the man discussed the possibility of getting a gun from Amazon or Walmart and how Reed would take the man to Joey's home to "stake him out." After the call, Reed took $100 that Evert had given him and wired the money to the man. However, the man later stated he could not "do it" and would return the money.

¶4      Around the same time, Reed sent several messages to friends about the plot against Joey. Reed told one friend, "I'm going to kill [Joey]." He told another friend that "I might be going to persion [sic] for life" and that "I have a green light on someone[;] he needs to be gone by Monday." Reed told a third friend, "I have a green light[;] i need a pi[e]ce."

¶5      After the Illinois man refused to get involved, Kirschner told Reed one evening that "you got to go do it. I can't take it no more." Reed acquiesced to Kirschner's request and said he would "take care of it." Reed grabbed a steak knife and then drove to Joey's home.

¶6      Upon arriving at Joey's home, Reed rang the doorbell, and Joey opened the door. The two men had a brief exchange of words, with Reed stating: "You mother fucker. Stop messing with my sister." According to Joey, Reed immediately pulled a three-inch kitchen knife from his hip and attempted to stab Joey in his midsection. Joey blocked the knife with his right arm and was stabbed in his upper forearm. Reed subsequently removed the knife from Joey's arm and raised the knife up in the air, holding the knife in a downward, thrusting position. Joey grabbed Reed's arm, which prevented Reed from stabbing Joey

again. A brief struggle ensued, but it was quickly broken up when Joey's grandfather came out of the home and yelled at Reed. Joey and Reed released each other, and Reed took off running. Although Joey survived the stabbing, he suffered permanent nerve damage in his arm.

¶7 Shortly thereafter, Reed was arrested, and he gave a statement to law enforcement about the incident. Reed admitted to stabbing Joey, but he claimed that he did so only because Joey had started choking him. Later in the interview, however, Reed admitted that he went to Joey's home to stab Joey "but probably just in the arm." Reed claimed that he "just wanted to hurt [Joey,] but he didn't want to kill him." The State initially charged Reed with one count of first-degree recklessly endangering safety with use of a dangerous weapon. After further investigation, and upon obtaining additional information, the State filed a new criminal complaint charging Reed with one count of conspiracy to commit first-degree intentional homicide. The first charge was subsequently dismissed.

¶8 Reed pled no contest to the conspiracy charge, and the circuit court ordered a presentence investigation report (PSI), which was filed before the sentencing hearing. The PSI detailed, among other things, Reed's criminal history, and it recommended that the court sentence Reed to thirteen years' initial confinement followed by six years' extended supervision.

¶9 At the sentencing hearing, the parties jointly recommended a sentence of ten years' initial confinement followed by ten years' extended supervision. The circuit court, however, rejected the parties' recommendation. The court expressed dismay over how Reed became involved with this plot and attacked Joey "for no discernable reason." The court also discussed Reed's criminal history, noting that Reed had thirteen criminal convictions as an adult and

4

four adjudications as a juvenile. Of those offenses, the court observed that thirteen offenses involved violence. The court also prominently noted the PSI author's comment that he did not disagree with Joey's belief that Reed should receive the "[m]aximum sentence possible." Ultimately, the court imposed a forty-five-year sentence, consisting of twenty-five years' initial confinement followed by twenty years' extended supervision.

¶10    Reed subsequently filed a postconviction motion, requesting plea withdrawal or, alternatively, resentencing or sentence modification. Reed alleged that he received ineffective assistance of counsel because his trial counsel: (1) failed to inform him of potential trial defenses, such as seeking an instruction on self-defense or for a lesser-included offense; (2) failed to seek plea withdrawal prior to sentencing despite Reed's insistence that he did not intend to kill Joey; (3) failed to investigate Reed's "criminal history" that was detailed in the PSI; and (4) failed to request an adjournment at sentencing to clarify the PSI author's sentence recommendation. Reed further alleged that the circuit court relied on inaccurate and improper information at sentencing and that his cooperation after sentencing constituted a new factor.

¶11    The circuit court denied Reed's motion without an evidentiary hearing, but it allowed him to amend his motion to allege that his trial counsel "strong[-]armed him into a plea." Thereafter, Reed filed an amended motion, alleging that he received ineffective assistance of counsel because his trial counsel "overcame Reed's will not to plead" by insisting that Reed accept the plea agreement and because trial counsel failed to adequately consider Reed's request to withdraw his plea before sentencing. The court held a *Machner* hearing on Reed's amended motion, at which Reed and his trial counsel testified. The court later denied Reed's amended motion in a written decision.

5

¶12   Reed appeals.  Additional facts will be provided as necessary below.

## DISCUSSION

### I.  Plea withdrawal on the basis of ineffective assistance of counsel

¶13   A defendant may withdraw a guilty or no-contest plea after sentencing if the defendant shows by clear and convincing evidence that a refusal to allow plea withdrawal would result in manifest injustice.  *State v. Jeninga*, 2019 WI App 14, ¶11, 386 Wis. 2d 336, 925 N.W.2d 574.  One way to establish manifest injustice is to show that the defendant received ineffective assistance of counsel.  *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶14   To show ineffective assistance of counsel, the defendant must prove: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89.  A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one.  *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶15   Under the deficient performance prong, a defendant must demonstrate that his or her trial counsel's performance fell below "an objective standard of reasonableness."  *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted).  "Courts afford great deference to trial counsel's conduct, presuming that it 'falls within the wide range of reasonable professional assistance.'"  *Id.* (citation omitted).  "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate."  *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶16 To establish prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Savage*, 395 Wis. 2d 1, ¶32 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In the plea withdrawal context, there must be "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *State v. Cooper*, 2019 WI 73, ¶32, 387 Wis. 2d 439, 929 N.W.2d 192 (citation omitted). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *Sholar*, 381 Wis. 2d 560, ¶44 (citing *Strickland*, 466 U.S. at 693).

¶17 Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. *Savage*, 395 Wis. 2d 1, ¶25. We will not overturn a circuit court's findings of fact—including findings regarding the factual circumstances of the case and trial counsel's conduct and strategy—unless those findings are clearly erroneous. *Id.* We review de novo whether counsel performed deficiently and, if so, whether counsel's deficient performance was prejudicial to the defense. *Id.*

A. *Reed's knowing, intelligent and voluntary plea*

¶18 Reed asserts that he did not knowingly, intelligently and voluntarily enter his plea because his trial counsel compelled him to enter his plea and because counsel failed to identify and inform Reed of potential defenses to the

7

offense charged before Reed entered his plea.[3] He contends that these actions and omissions by counsel constitute deficient performance. We address each of Reed's arguments in turn.

¶19 Reed argues that his trial counsel performed deficiently by "compelling" him to plead no contest to the conspiracy charge despite Reed "insist[ing] he never intended to conspire to kill [Joey]." This argument, however, wholly ignores the circuit court's finding that "Reed … wanted to go forward [with his plea]." Based upon evidence produced at the *Machner* hearing, the court recognized "that Reed was, <u>at first</u>, confused about" the intent element of the conspiracy charge but that counsel thoroughly explained—and ensured that Reed understood—the elements of the crime to which he pled. The court also noted that trial counsel took extra time, at Reed's request, to explain to Reed's mother how the evidence satisfied the elements of the crime. The court found "that Reed ultimately agreed that he understood these explanations." Reed provides no basis to conclude that these findings are clearly erroneous; therefore, they must be affirmed. *See Savage*, 395 Wis. 2d 1, ¶25.

¶20 Reed also contends that his trial counsel performed deficiently by not reasonably considering the relevance of Reed's version of how the stabbing occurred. In particular, he emphasizes his statement to law enforcement that he brandished the knife and stabbed Joey only after Joey started choking him. Reed

---

[3] Reed's arguments regarding whether he knowingly, intelligently and voluntarily entered his plea are, at times, disjointed and hard to follow. To the extent we do not address an argument related to this claim, we conclude that the argument was not sufficiently developed to warrant consideration. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

argues that this evidence was relevant to showing whether Reed had conspired to intentionally kill Joey.

¶21  Again, Reed's argument is directly contradicted by the circuit court's factual findings and the record.  As the court observed, trial counsel explained to Reed that his "subjective intent" at the time of the stabbing "would not matter to his plea to conspiracy because the crime of conspiracy was already committed when [Evert and Reed] phoned the guy in Illinois to commit a murder, or when they sent him money to commit a murder."  Indeed, conspiracy to commit first-degree intentional homicide is established if:  (1) the defendant intended that the crime of first-degree intentional homicide be committed; (2) the defendant agreed with at least one other person to commit the crime; and (3) one of the conspirators performed an act in furtherance of the conspiracy.  *See State v. Peralta*, 2011 WI App 81, ¶18, 334 Wis. 2d 159, 800 N.W.2d 512; *see also* WIS. STAT. § 939.31; WIS JI—CRIMINAL 570 (2008).

¶22  The State had strong evidence to establish each of these elements without relying on Reed's actions at Joey's home.  Reed explicitly told law enforcement that he understood that Evert was seeking to have Joey killed when Evert contacted the Illinois man.  Therefore, Reed's wiring of money to the man after Evert's phone call with the man is indicative of Reed's intent and agreement with Evert to have Joey intentionally killed and evidences an act in furtherance of the conspiracy.  In addition, Reed's intent and agreement are further buttressed by his numerous messages to friends, prior to his actions at Joey's home, about killing Joey and about Reed going to prison for life.

¶23  Accordingly, relying on Reed's account that he acted in self-defense when he stabbed Joey would not have been an effective defense because the

9

elements of the crime could be established from conduct that occurred well before Reed confronted Joey. Trial counsel thus did not perform deficiently by not giving further consideration to Reed's version of the stabbing.

¶24 Finally, Reed appears to argue that his trial counsel performed deficiently by not informing the circuit court that Reed "adamant[ly]" denied ever possessing the requisite intent for the offense.[4] Reed even suggests that counsel knew Reed was being "untruthful"—i.e., lied—during the plea colloquy. This argument, yet again, ignores the court's critical findings that, before entering his plea, Reed understood his trial counsel's explanations regarding the sufficiency of the evidence on each element of the crime and that Reed wanted to go forward with the plea agreement. Reed provides no basis to disturb these findings. Therefore, we can only conclude that counsel did not perform deficiently.

*B. Trial counsel's decision not to seek plea withdrawal before sentencing*

¶25 Reed also argues that his trial counsel performed deficiently by not seeking to withdraw Reed's plea because: (1) "Reed continued to deny he ever intended to kill anyone"; and (2) Reed asked counsel to withdraw his no-contest

---

[4] Reed's argument about whether he actually believed he had the requisite intent is largely beside the point because he pled no contest to the State's charge. By doing so, Reed did not admit unqualified guilt to that charge, "which is precisely the advantage of entering a no[-]contest plea instead of a guilty plea." *See State v. Black*, 2001 WI 31, ¶15, 242 Wis. 2d 126, 624 N.W.2d 363. Reed could therefore plead no contest, even while maintaining that he did not possess the requisite intent, "as long as the facts set forth in the complaint met the elements of the offense." *See id.* A factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or from facts admitted to by the defendant even though it may conflict with an exculpatory inference and the defendant later maintains that the exculpatory inference is the correct one. *Id.*, ¶16. Here, the facts alleged in the complaint gave rise to a reasonable inference that Reed possessed the requisite intent, even if Reed maintained that he did not. Accordingly, we cannot conclude that Reed's trial counsel performed deficiently simply because counsel did not inform the court of Reed's personal opinion on whether he possessed the requisite intent.

plea before sentencing. Reed asserts that his trial counsel should have investigated the reasons Reed wanted to withdraw his plea and should have attempted to withdraw the plea before sentencing.

¶26 Similar to Reed's earlier arguments, these arguments fail to overcome the circuit court's factual findings. The court found that after extensive discussions with his trial counsel, Reed understood the intent element of the crime to which he pled and wanted to go forward with the plea agreement. The court also expressly found that Reed had never asked trial counsel about withdrawing his plea before sentencing.

¶27 Reed provides no reason to second-guess the first of these two findings, and it therefore must be upheld. Reed argues, however, that the circuit court was required to find that he asked to withdraw his plea prior to sentencing because trial counsel was unable to definitively recall whether Reed made such a request.

¶28 We disagree. The circuit court was not required to credit Reed's testimony or find in his favor. *See State v. Ayala*, 2011 WI App 6, ¶10, 331 Wis. 2d 171, 793 N.W.2d 511 ("Where the [circuit] court is the finder of fact and there is conflicting evidence, the [circuit] court is the ultimate arbiter of the credibility of witnesses."). The court expressly credited trial counsel's testimony that he could not recall Reed requesting plea withdrawal and that counsel normally takes steps to address a client's plea withdrawal request. In contrast, the court observed that Reed's conduct and statements "throughout these entire proceedings, most especially at the [*Machner*] hearing …, demonstrate that he is a completely incredible, that is unbelievable, witness." The court noted numerous instances in which Reed admitted he lied during the proceedings and concluded "there is

11

absolutely no reason to believe any of the things which Reed is saying now." Based on the court's credibility determinations and trial counsel's testimony, the court could infer that Reed never requested to withdraw his plea before sentencing. Thus, the court's finding in that regard is not clearly erroneous.

¶29    In sum, because the circuit court's findings—i.e., that Reed understood and agreed to go forward with the plea agreement and never requested to withdraw his plea before sentencing—are not clearly erroneous, Reed has failed to show that his trial counsel performed deficiently by not seeking plea withdrawal before Reed's sentencing.

## II.  The right to an evidentiary hearing on a postconviction motion

¶30    A postconviction motion alleging ineffective assistance of counsel does not automatically entitle a defendant to a *Machner* hearing.  *State v. Phillips*, 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157.  Indeed, a circuit court need not hold a *Machner* hearing if the defendant fails to allege sufficient facts in his or her motion, if the defendant presents only conclusory allegations or subjective opinions, or if the record conclusively demonstrates that the defendant is not entitled to relief.  *Phillips*, 322 Wis. 2d 576, ¶17.  "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo."  *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶31    Reed alleged in his original postconviction motion that he received constitutionally ineffective assistance of counsel because his trial counsel failed to investigate his "criminal history" in Illinois and failed to inform the circuit court that the "criminal history" described in the PSI did not "conclusively determine" whether Reed had been convicted of felonies or misdemeanors in Illinois.  Reed

also alleged in an affidavit that he told his trial counsel he did not think he had been convicted of a number of the offenses identified in the PSI. The court rejected this claim prior to the *Machner* hearing. Reed renews these allegations and arguments on appeal, arguing that he received ineffective assistance of counsel because trial counsel failed to clarify how the offenses in the PSI were resolved or whether they ended in convictions.[5]

¶32     Reed's allegations in his original postconviction motion were insufficient to warrant a hearing.

> [A] defendant who alleges a failure to investigate on the part of his or her counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the case. A defendant must base a challenge to counsel's representation on more than speculation.

*State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 (citation omitted). Here, Reed has not alleged what his trial counsel would have discovered had counsel investigated Reed's criminal history in Illinois. Therefore, Reed can only speculate as to whether counsel's lack of investigation prejudiced Reed's defense, which is insufficient—as a matter of law—to entitle Reed to relief. *See id.*

---

[5] Reed develops two of his ineffective assistance of counsel claims—specifically, his claims that counsel failed to investigate his criminal history and failed to seek clarification regarding the sentence recommendation in the PSI—as if the circuit court considered and addressed them after the *Machner* hearing. We note, however, that the *Machner* hearing was limited to the issues raised in Reed's amended postconviction motion. We therefore construe Reed's arguments to be that he should have also received a *Machner* hearing on these ineffective assistance of counsel claims.

¶33    Reed also alleged in his original postconviction motion that his trial counsel was ineffective for failing to request an adjournment of the sentencing hearing to investigate and seek clarification regarding an "unclear" and "ambiguous" sentence recommendation in the PSI.  Reed asserted that this deficient performance was prejudicial because the circuit court relied on the "ambiguous recommendation."  Like the prior claim, the court rejected this argument before the *Machner* hearing.

¶34    Although Reed did not explain in his postconviction motion how the sentence recommendation was unclear, he identifies on appeal two statements that he believes are contradictory.  First, the PSI stated that "[Joey] … believes that Mr. Reed should be sentenced to the [m]aximum sentence possible and this writer does not disagree with [him], as it appears to this writer that Mr. Reed conspired to kill [Joey] and then he attempted to carry out that plan to kill [him]."  Second, the PSI stated that "[t]he Department of Corrections [DOC] respectfully recommends the [c]ourt sentence the defendant to 13 years in the Wisconsin State Prison System, followed by 6 years of extended supervision."

¶35    Despite these two statements, the record demonstrates that Reed is not entitled to relief.  At the sentencing hearing, the circuit court accurately read the amount of confinement recommended in the PSI, noting that "[t]he PSI suggests 13 years in prison."  However, the court found it "very interesting" that the PSI author agreed with Joey's recommendation for the "[m]aximum sentence possible."  The court observed that the PSI author was "required to follow [the DOC's Bifurcated Sentence Recommendation G]rid," and the court inferred that, by agreeing with Joey's recommendation, the PSI author "is saying much, much more time is actually appropriate."  The court nonetheless recognized: "Ultimately, the [sentencing] decision and responsibility is mine."

14

¶36 Under these circumstances, it would have been reasonable for an attorney to not seek an adjournment of the sentencing hearing to investigate the PSI author's comments. The circuit court plainly understood the DOC's formal sentence recommendation, which is demonstrated by the court's recitation of that recommendation on the record. Although the court inferred that the PSI author was suggesting a lengthier sentence—an inference that does not seem unreasonable on its face—the court also recognized that it was the ultimate decision maker on the matter. Accordingly, counsel's performance did not fall below an objective standard of reasonableness, and the record therefore conclusively demonstrates that Reed is not entitled to relief or a *Machner* hearing. *See Phillips*, 322 Wis. 2d 576, ¶17.

¶37 Reed next argues that he was entitled to a *Machner* hearing on his claim that his trial counsel failed to inform him before his plea that he could seek an instruction at trial for a lesser-included offense. Reed contends that such an instruction was a viable defense because the jury could have acquitted him of conspiracy to commit first-degree intentional homicide but convicted him of a lesser conspiracy offense, such as "conspiracy to injure or batter." In Reed's original postconviction motion, he alleged that he could have been convicted of "first-degree reckless endangering safety" or "first[-] and second[-]degree reckless injury."

¶38 As an initial matter, we note that Reed apparently concedes in his appellate brief that he would not have been entitled to submission of the lesser-included charges advanced in his original postconviction motion. As to the purported lesser conspiracy offenses, because Reed did not raise an argument regarding such offenses below, he has forfeited his claim on appeal. *See Schill v.*

*Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (we may deem issues forfeited if not preserved at the circuit court).

¶39     Regardless, Reed's allegations that he could have been convicted of a lesser-included offense are conclusory and undeveloped.  In particular, Reed fails to show how any offense identified in his postconviction motion (or his appellate briefing) is a lesser-include offense of conspiracy to commit first-degree intentional homicide.  To determine whether a crime is a lesser-included offense of another, Wisconsin courts employ an "elements-only" test.  *State v. Jackson*, 2011 WI App 63, ¶11, 333 Wis. 2d 665, 799 N.W.2d 461.   Under the "elements-only" test, "[a] lesser included offense may not include an additional element beyond those essential for conviction of the crime charged."  *Id.* WISCONSIN STAT. § 939.66 also provides additional circumstances in which an offense may be a lesser-included offense of another crime.

¶40     Reed has made no attempt—either in his postconviction motion or in his appellate briefing—to apply the "elements-only" test or to identify a provision under WIS. STAT. § 939.66 that provides a lesser-included offense to conspiracy to commit first-degree intentional homicide.  Although Reed identified some case law in his motion regarding lesser-included offenses to first-degree intentional homicide, he did not analogize those cases to the conspiracy offense at issue in this case or explain how those cases would otherwise apply.  Reed's allegations that he could have been convicted of a lesser-included offense are therefore conclusory and undeveloped.  Accordingly, the circuit court was not required to hold a *Machner* hearing to address Reed's conclusory allegations. *See Phillips*, 322 Wis. 2d 576, ¶17.

¶41    Finally, Reed argues that his counsel performed deficiently by failing to correct the circuit court's misunderstanding that the crime was "completely and totally [Reed's] fault." The record, however, conclusively establishes that the court was well aware of how other individuals were culpable as well. The court immediately acknowledged that the crime was "[Kirschner's and Evert's] fault too" and that "[Kirschner is] the driving force here." As a result, Reed was not entitled to a ***Machner*** hearing on this claim because he cannot show any deficient performance or prejudice.

**III.  Improper sentencing factors**

¶42    Our review of a circuit court's sentencing decision is limited to determining whether the court erroneously exercised its discretion. ***State v. Gallion***, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. A court erroneously exercises its sentencing discretion by relying on "clearly irrelevant or improper factors." ***State v. Williams***, 2018 WI 59, ¶45, 381 Wis. 2d 661, 912 N.W.2d 373 (citation omitted). To show reliance on an improper factor, a defendant must prove, by clear and convincing evidence, that the factor was improper and that the court actually relied on it. ***Id.*** When sentencing a defendant, a circuit court cannot rely on inaccurate information. ***Id.***, ¶46. Information is "inaccurate" if it is "extensively and materially false," not simply incomplete or disputed. *See* ***State v. Travis***, 2013 WI 38, ¶¶17-18, 347 Wis. 2d 142, 832 N.W.2d 491.

¶43    Reed argues that the circuit court relied on an improper factor by "assum[ing he] had been convicted of numerous felonies when the ambiguous information provided in the PSI didn't support this assumption." He contends that

the court should have further investigated his criminal history, "particularly when it appears certain arrests, ultimately, led to no convictions whatsoever."

¶44    Although Reed criticizes the circuit court's general reliance on his criminal history, he has not identified any specific information that was inaccurate in the PSI or in the court's discussion of his criminal history.  Reed also has not explained which of the cases noted in the PSI involved only an arrest and not a conviction, as he contends.  Even Reed's argument seems to recognize that the information in the PSI might be better characterized as "ambiguous," unclear, or vague instead of inaccurate.  Indeed, the PSI expressly stated that the dispositions of some of the cases were "[u]nknown" or "not reported."  Reed may disagree with the court's understanding of his criminal history, but he has not put forth any evidence—and certainly not clear and convincing evidence—to show that the court's understanding was inaccurate—much less extensively and materially so. Accordingly, Reed has failed to meet his burden of proving that the court relied on inaccurate information regarding his criminal history.

¶45    In addition, to the extent Reed renews his arguments that the circuit court should have held an evidentiary hearing on his claim that the court relied on inaccurate information about his criminal history, we disagree.  Reed alleged in his postconviction motion that the PSI's discussion of the number and type of convictions in Illinois "is *apparently* inaccurate and attempts to clarify his record [have] *not yet concluded*."  (Emphasis added.)  Again, Reed did not identify what information was purportedly inaccurate.  Reed's allegations were therefore conclusory and undeveloped.  As such, the court did not erroneously exercise its discretion by denying Reed's request for an evidentiary hearing.  *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 ("[I]f the

18

[postconviction] motion … presents only conclusory allegations, … the circuit court has the discretion to grant or deny a hearing.").

¶46    Reed also argues that the circuit court "improperly and inaccurately interpreted" the sentence recommendation of the PSI author.  He contends that the PSI author recommended only the maximum amount of confinement under the DOC recommendation grid, not the statutory maximum sentence for the offense charged.  As noted earlier, however, the court understood the DOC's formal sentence recommendation in the PSI, which was thirteen years' initial confinement and six years' extended supervision.  Although the court inferred that the PSI author was personally recommending a lengthier sentence by agreeing with Joey's recommendation, Reed has not sufficiently shown—i.e., by clear and convincing evidence—that the court's interpretation was manifestly inaccurate or improper.

¶47    Reed directs our attention to emails between his appellate counsel and the PSI author, but he fails to explain how those later-written emails "establish[] the court's interpretation was inaccurate."  Indeed, Reed does not quote or highlight any of the statements made in the PSI author's emails.  Reed's arguments are therefore underdeveloped, and we will not abandon our neutrality to develop Reed's arguments for him.  *See* ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.  Even if we could, our review of the emails does not reveal any clear and convincing evidence that the circuit court's inference regarding the PSI author's comments was extensively and materially false.

¶48    Reed next argues that the circuit court relied on an improper factor by comparing the DOC's sentence recommendation in Reed's case to past sentence recommendations by the DOC.  Reed, however, fails to cite any legal

authority in support of his proposition that a circuit court cannot consider its experience in its sentencing decisions. Thus, we need not address this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments with no supporting legal authority). Regardless, a circuit court is not prohibited from considering its criminal sentencing experience when determining whether a certain sentence is appropriate. *See State v. Ogden*, 199 Wis. 2d 566, 573, 544 N.W.2d 574 (1996).

## IV. New Factor

¶49    In determining whether to modify a sentence on the basis of a new factor, a circuit court considers: (1) whether the defendant has shown the existence of a new factor by clear and convincing evidence; and (2) whether the new factor justifies modification of the sentence. *State v. Harbor*, 2011 WI 28, ¶¶36-37, 333 Wis. 2d 53, 797 N.W.2d 828. If a court determines that the facts do not constitute a new factor, the court need not address the second inquiry. *Id.*, ¶38. A "new factor" is defined as

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Id.*, ¶40 (citation omitted). Whether a new factor exists is a question of law that we review de novo. *Id.*, ¶33.

¶50    Reed argues that his "full cooperation" in the State's prosecution of Evert is a new factor. In particular, Reed contends that the circuit court did not know at the time of sentencing that he would reject Evert's request that Reed not

testify in Evert's criminal case involving conspiracy to commit first-degree intentional homicide. Reed's argument is misplaced.

¶51 Reed's cooperation with law enforcement and his anticipated assistance were well known at the time of sentencing. The State informed the circuit court at both the plea and sentencing hearings that Reed agreed to cooperate with law enforcement as part of his plea agreement. At the sentencing hearing, the State specifically stated that Reed "did meet with law enforcement. He did cooperate, and he's agreed to give testimony against the others as part of this agreement here." The court subsequently acknowledged Reed's cooperation during its sentencing remarks.

¶52 Although the circuit court may not have specifically known at sentencing that Reed would reject Evert's request not to testify, the court undoubtedly knew that Reed would be likely providing some form of assistance to law enforcement in the future. Moreover, the fact that Reed might face pressure not to testify and that Reed would resist that pressure could be reasonably expected, especially given the gravity of Evert's offense and Reed's obligation under the plea agreement to testify. Thus, Reed's assistance was neither unknown nor "highly relevant" to the imposition of his sentence because the court considered Reed's cooperation and factored it into Reed's sentence accordingly. *See id.*, ¶40. For those reasons, Reed has failed to establish the existence of a new factor.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

21